UNITED STATES of America, Plaintiff-Appellee,

v.

Dwayne E. HEAD (90–3288), Edward A. Black (90–3442), Tony F. Swanson (90–3467), Jacob Stewart (90–3480), Defendants–Appellants.

Nos. 90–3288, 90–3442, 90–3467 and 90–3480.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 26, 1990.

Decided March 18, 1991.

Michael Burns (argued), Office of the U.S. Attorney, Columbus, Ohio, for plaintiff-appellee.

Terry K. Sherman (argued), Columbus, Ohio, for Dwayne E. Head, defendant-appellant.

Richard A. Cline (argued), Columbus, Ohio, for Edward A. Black, defendant-appellant.

Jeffrey Allen Berndt (argued), Columbus, Ohio, for Tony F. Swanson, defendant-appellant.

Steven S. Nolder (argued), Columbus, Ohio, for Jacob Stewart, defendant-appellant.

Before NORRIS, Circuit Judge, WELLFORD,* Senior Circuit Judge, and BALLANTINE, Chief District Judge.**

BALLANTINE, Chief District Judge.

In September, 1988, the Columbus, Ohio Police Department was alerted to the possibility that one-half of a duplex on East 21st Avenue in Columbus was being used for illicit drug activity. Police established surveillance and on September 14 and September 16, 1988, the police made controlled purchases of cocaine-base, commonly called crack.

About 25 minutes after the last purchase was made, a SWAT team, armed with a search warrant, stormed the house. The team's approach was spotted by someone in the house who alerted the other occupants seconds before the police entered.

The portion of the duplex which the police entered was a small, single-story apartment with a basement. The only electricity in the apartment was provided by an extension cord from the adjoining unit. The entire apartment was about 25 feet by 25 feet in size.

The search of the basement produced 112 plastic bags containing 31.4 grams of 97% pure cocaine. A baggie containing .19 grams of crack was found on the person of Daniel Neal.[1]

Appellant Dwayne Head, to whom the premises were leased, was found seated on a chair near the front door. Neal and appellant Jacob Stewart were seated on a sofa in the living room of the apartment. Appellant Tony Swanson was standing in the hallway and when the officers entered, he ran toward the rear of the house. He was stopped after he had gone only a few feet. Appellant, Edward Black was found in the basement under the staircase "curled up in a ball." (T.E. I-7).

Execution of the search warrant further produced four firearms in the residence— two pistols and two sawed-off shotguns. One of the pistols fell from Neal's lap when he was ordered by the police to stand.[2] One shotgun was found at Swanson's feet and when Swanson was ordered to lie on the floor so the officers could restrain him, a small caliber pistol was found under his legs. The second shotgun, according to the police, was found in the kitchen (T.E. I-101). Neal and Stewart testified that the second shotgun was in the living room (T.E. I-53 and T.E. II-106).

In July, 1989, the grand jury handed up a six-count indictment charging Head, Black, Neal, Swanson and Stewart with possession with intent to distribute cocaine base (crack). Title 21 U.S.C. § 841(a)(1). Head was also charged with distribution of crack on September 14 and 16, 1988, Title 21 U.S.C. § 841(a)(1), and managing or con-

---

* The Honorable Harry W. Wellford assumed Senior Judge status on January 21, 1991.

** The Honorable Thomas A. Ballantine, Jr., Chief Judge, United States District Court for the Western District of Kentucky, sitting by designation.

1. Neal entered a plea of guilty prior to trial and is not a party to this appeal.

2. Neal testified that he knocked the gun on the floor when he heard the police coming in. (T.E. I-52.)

trolling as lessee the premises on East 21st Avenue for the purpose of distributing, using and storing crack, Title 21 U.S.C. § 856(a)(2). Neal and Swanson were each charged with using or carrying a firearm during and in relation to a drug-trafficking crime. Title 18 U.S.C. § 924(c)(1).

Head entered a plea of guilty to a charge of possession with intent to distribute crack and has appealed the sentence imposed. After a jury trial, the other defendants were found guilty of possession with intent to distribute crack and Swanson was also found guilty of the firearm charge.

### SWANSON [3]

Swanson raises two issues on appeal. He first argues that the trial court erred when it denied his F.R.Cr.P. 29 motion for judgment of acquittal. His second argument challenges the upward departure from the sentencing guidelines (USSG) in imposing a sentence of 162 months on the drug count and a consecutive 60–month sentence on the firearm charge.[4]

■ It is now well settled that appellate review of the sufficiency of the evidence to support a conviction must take the view most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942). In *United States v. Adamo,* 742 F.2d 927, 932 (6th Cir.1984), cert. denied sub nom. *Freeman v. United States,* 469 U.S. 1193, 105 S.Ct. 971, 83 L.Ed.2d 975 (1985), this court reviewed the standards by which a trial court confronted with a Rule 29 motion must be guided:

It is well established that a trial judge confronted with a Rule 29 motion must consider all of the evidence in a light most favorable to the government and grant the motion when it appears to the Court that the evidence is insufficient to sustain a conviction. The government must be given the benefit of all inferences which can reasonably be drawn from the evidence, even if the evidence is circumstantial. It is not necessary that the

evidence exclude every reasonable hypothesis except that of guilt.

(Citations omitted.)

The court then determined that its review requires the application of the same standard. *Id.* With this teaching in mind, we return to the evidence against Swanson.

■ Officer Reffitt of the SWAT team testified that when he entered the house he saw Swanson in the hallway by the bathroom. Swanson ran between three and five feet toward the rear of the house before Reffitt stopped him and ordered him to lie on the floor (T.E. I–95). When Swanson was ordered to the floor Reffitt saw a shotgun at Swanson's feet (T.E. I–96). When Swanson was handcuffed, a small caliber handgun was found under his legs. Reffitt unloaded the handgun and the shotgun, which was a 20–gauge shotgun. He testified that the second shotgun was found in the kitchen (T.E. I–101). Reffitt conceded that he did not see Swanson with the shotgun in his hands (T.E. I–111). Officer Hile of the SWAT team conducted a "pat down" search of Swanson and found two 20–gauge shotgun shells in his pocket.

Viewing the evidence against Swanson in the light most favorable to the government leads to the conclusion that a rational trier of fact could find beyond a reasonable doubt that Swanson was in the house as a security measure. Although he was not seen with the shotgun in his hand, the weapon was close at hand and was loaded.

At trial the jury heard evidence that when the SWAT team burst into the apartment Swanson at first attempted to flee. When he was subdued a loaded 20–gauge shotgun was found at his feet and two 20–gauge shotgun shells were found in his pocket.

The jury learned that defendant Black was in the unlighted basement hiding under a stairway near a table on which the packages of crack were sitting. The jury also learned that an individual in the base-

---

**3.** Swanson was sometimes referred to as "Boomer."

**4.** Swanson does not suggest that the 5–year consecutive sentence is not mandatory under Title 18 U.S.C. § 924(c)(1), nor does he challenge the finding of an offense level of 28.

ment had earlier ordered the lessee, defendant Head, out of the basement after Head had seen "rocks" of crack on the table (T.E. I–80).

Head testified that he didn't know how many persons were in the apartment when the SWAT team entered it or how those persons got into the apartment (T.E. I–78).

From this testimony and applying the standards of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), we conclude that a rational trier of fact could find beyond a reasonable doubt that the apartment was being used to sell crack and that Swanson, armed with a sawed-off shotgun, was there to protect the drugs and the transactions.

In *United States v. Henry,* 878 F.2d 937 (6th Cir.1989), this court, citing *United States v. Matra,* 841 F.2d 837 (8th Cir. 1988), and *United States v. LaGuardia,* 774 F.2d 317 (8th Cir.1985), applied the "fortress analogy" theory which holds that if it reasonably appears that firearms found on premises controlled or owned by defendant and in his actual or constructive possession are to be used to protect the drugs or to facilitate a drug transaction, then the firearms are "used during and in relation" to a drug trafficking offense.

The terms "uses" and "carries," in Section 924(c)(1), "should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions." *United States v. Acosta–Cazares,* 878 F.2d 945, 952 (6th Cir.), cert. denied, ―― U.S. ――, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989).

We found no error in the denial of the motion for judgment of acquittal and we affirm the conviction of appellant Swanson.

A more troublesome question is presented by Swanson's argument that the trial court erred when it departed upward from the guidelines by increasing his criminal history category from II to V and imposing a sentence of 162 months for the drug count and a 60–month consecutive sentence on the firearm count.

In departing from the USSG, the Court set forth its reasons for departure:

The Court finds there exists aggravating circumstances to a degree not adequately taken into consideration by the sentencing commission in formulating the guidelines. The report of the United States probation officer sets Mr. Swanson's offense level at level 28 and his criminal history at 2 points or a level of II.

Although the probation officer properly applied the sentencing guidelines to the defendant's criminal history, the guidelines clearly do not adequately take into consideration the magnitude of the crimes committed, the violence the defendant has consistently demonstrated and the serious threat to society that the defendant poses.

A review of his adult history reveals as follows:

At age 20 the defendant was involved in a fight, threatened harm to individuals. Three years later he was incarcerated for carrying a concealed weapon. At the time of the weapons discovery and during the proceedings thereafter, the defendant, according to court records, threatened to kill the police officer and the Franklin County municipal court judge. Those matters are reflected in defendant's criminal history.

However, the criminal history level does not reflect that on March 7, the defendant was charged with assault and resisting arrest. And, most importantly, the criminal history level does not reflect that the defendant has state charges pending for murder. The events that precipitated the murder charge occurred while defendant was on recognizance bond for the instant matter.

Considering the defendant's violent, dangerous criminal history and the lack of success from prior incarceration and rehabilitation measures, coupled with his sole livelihood as a gun-carrying drug dealer with a penchant for pulling the trigger, the defendant fits the classic profile of a career, recidivist criminal who has and will continue to pose a very serious threat to the community.

Taking those factors into consideration, the Court has reviewed criminal history levels III, IV and V in coming to the conclusion that the defendant's prior actions warrant a criminal history level of V. At an offense level of 28, this places the defendant in the 130 to 162 month range.

(Proceedings of May 10, 1990, pages 4–6.)

Title 18 U.S.C. § 3553(c)(2) requires the sentencing court to:

state in open court the reasons for its imposition of a particular sentence and if the sentence—

&ast; &ast; &ast; &ast; &ast; &ast;

(2) is not of the kind or is outside the range [of USSG] the specific reason for the imposition of a sentence different from that described.

This language was addressed by this court in *United States v. Rodriguez*, 882 F.2d 1059, 1066 (6th Cir.1989), cert. denied, — U.S. —, 110 S.Ct. 1144, 107 L.Ed.2d 1048 (1990):

Where a district court chooses to depart, "a short clear written statement or a reasoned statement from the bench" must support the departure. &ast; &ast; &ast; The Court is not required to "incant the specific language used in the guidelines," [*United States v.] De Luna–Trujillo*, 868 F.2d [122] at 124, [ (5th Cir.1989) ] but should "identify clearly the aggravating factors and its reasons for connecting them to the permissible grounds for departure...." *Id.* If the district court fails to articulate the specific reasons for its departure in language relating to the Guidelines, we are unable to review its exercise of discretion.

■ Later, in *United States v. Kennedy*, 893 F.2d 825, 829 (6th Cir.1990), the court required a sentencing court to refer to the next higher criminal history category before otherwise departing from the guidelines. The *Kennedy* court imposed a two-prong requirement on a sentencing court departing from the guidelines. First, the court must articulate its reasons for departing from the guidelines in language relating to the guidelines. Second, it must demonstrate either that it first looked to the next higher criminal history category for guidance or it must find the sentence under the next higher criminal category too lenient. *Id.*

In the case before this court, Swanson's criminal history disclosed a misdemeanor conviction for disorderly conduct arising out of a fight in a pizza parlor. He was fined $30.00. USSG 4A1.2(c)(1) excludes misdemeanors, including disorderly conduct, unless the sentence was for a term of probation for at least one year or a term of imprisonment for at least 30 days. It therefore can readily be seen that the Sentencing Commission adequately took misdemeanor convictions into account in computing criminal history points.

Swanson's second conviction was for carrying a concealed weapon and his six-month sentence resulted in two criminal history points being assessed. USSG 4A1.-1(b). The arrest for the weapons charge led to additional charges of aggravated menacing when Swanson allegedly threatened to shoot the arresting officer and the judge to whom Swanson's case was assigned. Since these are related cases, the sentences are to be considered as one sentence. USSG 4A1.2(a)(2). Again we find that the Sentencing Commission took this situation into account in assessing two criminal history points for the combined offenses.

The sentencing court also relied on a charge of assault and a charge of resisting arrest which were resolved by dismissal of the assault charge, and a 30–day suspended jail sentence on the resisting arrest charge. The conviction for resisting arrest has been considered by the Sentencing Commission which excluded such a charge from computation. USSG 4A1.2(c)(1).

Finally, the trial court considered a pending murder charge which was brought against Swanson while he was on pretrial release pending resolution of the charges from which this appeal stems.

According to the pre-sentence report, Swanson was charged with murder but his trial resulted in a mistrial when the jury deadlocked 7 to 5 for acquittal (PSI report, p. 10, paragraph 34). Swanson was being

detained on the state charges at the time this case was tried and at the time sentence was imposed. It is obvious that the trial court departed upward based on its perception that Swanson fits the classic profile of a career recidivist criminal who has and will continue to pose a very serious threat to the community. These conclusions, however, will not explain how the guideline range was inadequate and, of more concern, they do not contain any reference to the reasons for the inapplicability of the next two higher criminal history categories.

*Kennedy* mandates "that a sentencing court must first look to the next higher criminal history category before otherwise departing." 893 F.2d at 829. Without the benefit of the trial court's articulation of its specific reasons for looking to and rejecting the next two higher criminal history categories, this Court is unable to review the trial court's exercise of discretion.

This Circuit has adopted a three-step test for reviewing sentences that depart from the guidelines:

> "First, we assay the circumstances relied on by the district court in determining that the case is sufficiently 'unusual' to warrant departure. That review is essentially plenary: whether or not circumstances are of a kind or degree that they may appropriately be relied upon to justify departure is, we think, a question of law.
>
> Second, we determine whether the circumstances, if conceptually proper, actually exist in the particular case. That assessment involves factfinding and the trier's determinations may be set aside only for clear error. *See* 18 U.S.C. § 3742(d).
>
> Third, once we have assured ourselves that the sentencing court considered circumstances appropriate to the departure equation and that those factors enjoyed adequate record support, the direction and degree of departure must, on appeal, be measured by a standard of reasonableness. * * * In this context, reasonableness is determined with due regard for "the factors to be considered in imposing a sentence," generally, and "the

reasons for the imposition of the particular sentence, as stated by the district court...." 18 U.S.C. § 3742(d)(3).

This third step involves what is quintessentially a judgment call. District courts are in the front lines, sentencing flesh-and-blood defendants. The dynamics of the situation may be difficult to gauge from the antiseptic nature of a sterile paper record. Therefore, appellate review must occur with full awareness of, and respect for, the trier's superior "feel" for the case. We will not lightly disturb decisions to depart, or not, or related decisions implicating degrees of departure.

*United States v. Joan*, 883 F.2d 491, 494 (6th Cir.1989), quoting *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir.), cert. denied, —— U.S. ——, 110 S.Ct. 177, 107 L.Ed.2d 133 (1989).

Given the absence of any statement of the reasons the trial court looked at and rejected the next two higher criminal categories, we cannot say as a matter of law that the case is sufficiently unusual to warrant departure beyond the next category or the next two categories.

The sentence imposed by the trial court will be vacated and the action will be remanded for resentencing consistent with what is written here.

### STEWART

Appellant Stewart raises three issues for review.

He first argues that the evidence was insufficient to permit a rational trier of fact to find him guilty beyond a reasonable doubt. His second issue challenges the refusal of the trial court to give a limiting instruction as to the firearms evidence introduced against appellant Swanson. His third issue attacks the two-level enhancement of his sentence under USSG § 2D1.1(b)(1) and the two-level enhancement under USSG § 3C1.1.

■ As we have noted, when the SWAT team entered the apartment, Stewart was seated on the couch in the living room. There was no evidence that he resisted

arrest, that he was in possession of any controlled substance, or that he was armed. At the time Stewart was searched, he was found to have $50.00 in cash which was identified as the money used to make the control purchase of crack September 16, just before the raid.

Stewart testified that he went to Head's apartment for the first time on September 16, 1988, arriving at about 5:30 p.m. He went to the apartment with Swanson because he had heard there was going to be a party. When he arrived, he found Neal and an individual named Perry at the apartment (T.E. II—92–93). After talking with Neal, Perry and Swanson for awhile, Stewart went into the kitchen where he joined a crap game which was in progress (T.E. II–94). Stewart testified that he won about $80 or $85 in the crap game and that he assumed that he came into possession of the prerecorded money during the crap game (T.E. II–97).

On cross-examination, Stewart testified that while the crap game was in progress, about four people came in the back door of the apartment but none stayed more than a minute. Stewart did not notice anyone going into the basement although he had to keep moving around as people came through the kitchen. (T.E. II 105–106). Stewart was equivocal when asked whether he had seen appellant Black come out of the basement while the crap game was in progress (T.E. II–109–110).

In *United States v. Winston*, 687 F.2d 832, 834 (6th Cir.1982), the court recognized that "[d]rawing an exact line of sufficient participation [to support a conviction for aiding and abetting], especially in drug distribution cases, is difficult if not impossible." Although there is no evidence that Stewart actually touched or possessed the crack, all the government need show is that he " 'act[ed] or fail[ed] to act with the specific intent to facilitate the commission of a crime by another.' " *Id.* at 835, quoting *United States v. Bryant*, 461 F.2d 912, 920 (6th Cir.1972).

We reject Stewart's argument that since he was upstairs when the SWAT team broke in and that he had neither drugs or weapons when searched, it follows that the government has failed to sustain its burden. We conclude that a rational trier of fact could have found Stewart guilty beyond a reasonable doubt. His possession of the two $20.00 bills and the one $10.00 bill used in the controlled buy is substantial evidence of his involvement in the crack operation. A rational jury could have rejected his crap game testimony. The jury could very well have concluded that since there was no electricity in the kitchen, it would have been next to impossible to conduct a crap game. The jury could also have concluded that the kitchen was too small to accommodate a crap game since it was 5 or 6 feet wide with cabinets on one wall and a stove and cabinets on the other wall with a narrow place to walk down the middle of it (T.E. II–48).

It is also logical for the jury to conclude that sales and delivery were made in the kitchen in order to prevent purchasers from going into the basement. The jury had already learned that Head, the lessee of the apartment, had been ordered out of the basement where the crack was stored and the jury could infer that the parties involved were determined that no one should come to the basement.

We are not persuaded that Detective Trout's grand jury testimony that the informant who made the buy identified Head as the person making the sale somehow absolves Stewart of guilt. Assuming that the hearsay grand jury testimony is accurate, the jury could infer that since Head was not permitted in the basement, neither was he to be trusted to retain money received from a purchaser of crack.

■ We turn next to Stewart's argument that the refusal of the district court to give a limiting instruction regarding the firearms evidence is prejudicial error.[5]

5. Because appellant Edward Black has advanced an identical argument and in his brief adopts by reference the arguments of Stewart, we will consider the arguments of Stewart on this point as applying to both appeals.

At the conclusion of the government's case the record discloses the following:

"... OUT OF THE HEARING OF THE JURY, THE FOLLOWING PROCEEDINGS WERE HAD:

MR. BURNS [Assistant U.S. Attorney]: Move to offer my exhibits and rest.

THE COURT: I will let you rest so you can say you rest in front of the jury. Then we will take up the exhibits and the jury instructions so that the people aren't sitting here.

... IN THE HEARING OF THE JURY, THE FOLLOWING PROCEEDINGS WERE HAD:

MR. BURNS: Subject to the Court's ruling on the admissibility of the various exhibits, the government would be prepared to rest.

THE COURT: Ladies and gentlemen, this is an appropriate time to have you excused for lunch.

\*    \*    \*    \*    \*    \*

MR. CLINE [counsel for appellant Black]: Your Honor, with respect to items 4, 5–1, 5–2, 5–3, 6, 7, 8–1 and 8–2—those are items which I will collectively call firearms or related things to firearms—I would object to the admissibility of those items as it relates to Mr. Black because he's not charged with a firearm charge and I don't think they are probative of any element of the charge that he is charged with. I would ask the Court to rule that those items may not be admitted as to Mr. Black; and if they are admitted as to other defendants, that a limiting instruction be made showing that they are admitted only as to those persons charged with a firearms charge.

\*    \*    \*    \*    \*    \*

MR. NOLDER [counsel for appellant Stewart]: Your Honor, briefly I would adopt Mr. Cline's argument as to the firearms in that the firearms that the government proposes to introduce, if they are admitted, that the Court give a limiting instruction as to which defendant they should be admitted and not against Mr. Stewart because he is not charged also with firearms.

THE COURT: Mr. Burns.

MR. BURNS: Your Honor, the defendants are charged as aiders and abettors and possession with intent to distribute cocaine base. The government has attempted to portray 1037 East 21st Avenue as a crack house. It seems to me that the firearms are merely paraphernalia that one would expect to find in a crack house, and I think for that reason the fact that we found it there tends to demonstrate that this was in fact a crack house. They have all been authenticated, they have all been identified, they are admissible. What ever weight the jury wants to give to them is their province. I think they should be admitted.

THE COURT: Thank you Mr. Burns.

Based on that reasoning, the Court is in agreement that the exhibits should be admitted. Obviously, they are not going to have a verdict form for other than Mr. Swanson on possession of a firearm, and the jury I think would be smart enough to understand what relates to those charges and what does not. It is well known that this type of paraphernalia is part of what is found in an ongoing operation of a crack house. And although they are not charged specifically with that, they are charged with possession with intent to distribute, which is all part of the same crack house operation.

\*    \*    \*    \*    \*    \*

Anything else on the exhibits?

MR. CLINE: Your Honor, if I may, just so that I am clear, and so the record is clear, I don't think that there is in evidence any evidence that weapons of this type are routinely found in crack houses.

And, secondly, I would like to be clear in my own mind on the record as to the Court's ruling on a limiting instruction.

THE COURT: I don't think it is necessary. There is not going to be a verdict form for Ed Black for possession of a firearm, as there is not going to be a verdict form for that for Mr. Stewart. There is only one verdict form that deals with a firearm and that has Mr. Swan-

son's name on it. I just don't think it's necessary. \* \* \* \*

MR. CLINE: Your Honor, may I consult with co-counsel for just a moment?

(Discussion at defense counsel table.)

MR. CLINE: Your Honor, if I may, I would ask that the Court allow a limiting instruction that Mr. Nolder and myself drafted and would propose if the Court felt that a limiting instruction was necessary, ask that it be marked and appended to the record. Obviously the Court's already ruled it will not be given but we would like to make it part of the record.

THE COURT: What is the instruction?

MR. CLINE: It would be entitled Limiting Instruction. Certain items of physical property have been admitted into evidence. Among those items are items which have been identified as either shotguns, pistols or shotgun shells. You are instructed that Edward Black and Jacob Stewart are not charged with any firearms violations with respect to any of these exhibits. You may not consider these exhibits as evidence against Edward Black or Jacob Stewart because neither Mr. Black nor Mr. Stewart is charged with a firearm violation.

THE COURT: You have got it in the record.

MR. NOLDER: I would join in that.

THE COURT: I understand. Thank you.

MR. CLINE: Thank you, your Honor.

THE COURT: So my ruling is clear, the Court feels that due to the fact that this paraphernalia and items are normally found in a crack house, that they would tend to show—they may tend to prove Count 3 of the indictment."

(T.E. II–73, 75–76, 77–80).

F.R.Evid. 105 provides:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly.

The district court's quoted reasoning for admitting the firearms leads us to conclude that the refusal to give a limiting instruction does not amount to prejudicial error.

In *United States v. Gallo*, 763 F.2d 1504 (6th Cir.1985), *cert. denied*, 475 U.S. 1017, 106 S.Ct. 1200, 89 L.Ed.2d 314 (1986), the court refused to adopt a per se requirement that Rule 105 mandates a limiting instruction in every instance:

Assuming that the court's general instructions wer [sic] not the specific mandate required by Rule 105, we consider the alternate argument of the government that Rule 105 instructions are not required if the evidence is relevant, material, and otherwise admissible without limitation against the party requesting the instruction. If certain evidence is admissible against one defendant on one particular count, and the primary purpose of the presentation is to prove that count, a court need not give Rule 105 instructions requested by a co-defendant if the evidence is also admissible against the latter as to a completely different count.

Id. at 1528 (citations omitted).

We believe that the district court's statement of the purpose for which the firearm evidence was to be admitted against Stewart and Black, coupled with the verdict forms which contain no reference to firearms, are sufficient to resist appellant's Rule 105 argument. Accordingly, we find no error in the Court's refusal to give a limiting instruction.

Finally, we address Stewart's appeal of the 132–month sentence imposed by the district court.

There is no argument that USSG § 2D1.1(a)(3) and (c)(8) establish a base offense level of 28 with a guideline range of 78–97 months in the case of a defendant with a criminal history Category I, the category applicable to Stewart. At issue is a two-level increase for possession of a firearm during the commission of the offense, USSG § 2D1.1(b)(1), and a two-level increase for obstructing justice during the prosecution, USSG § 3C1.1, thereby increasing the guideline sentence range to 121–151 months.

On May 10, 1990, a sentencing hearing was held at which counsel for Stewart made the following comment on the presentence investigative report:

As far as remaining objections with regards to this report, I note for the record that objection No. 1 regarding the two point enhancement for Mr. Stewart's possession of a firearm in his offense, it's my understanding is resolved. And objection No. 2, the minor role deduction which we request that Mr. Stewart get, we would withdraw at this time.

(Tr. Sentencing Hearing, p. 2). Following these remarks by appellant's counsel, the Assistant United States Attorney for the first time advanced an argument in support of a two-level increase for obstructing justice.

At this hearing the district court agreed with counsel for appellant that a two-level increase for possession of a firearm was inappropriate. Id. at 4. When the court was told that the United States had not complied with a local district court order requiring that objections to the presentence report be made in writing before the sentencing hearing, the district court granted a continuance until appellant's counsel could prepare a response to the government's argument. Id. at 6–7.

At the second sentencing hearing the government attorney reviewed the trial testimony of Stewart, arguing that inconsistencies between the testimony of Stewart and other witnesses and inconsistencies in Stewart's own testimony supported a finding that Stewart had obstructed justice by perjuring himself.

■■■ The commentary to § 3C1.1 indicates that a two-level increase may not be imposed merely because a defendant elects to go to trial on his plea of not guilty, nor may a defendant's offense level be increased because he refuses to admit his guilt or provide information to a probation officer. On the other hand, committing perjury at trial is the type of conduct to which the two-level enhancement applies. *United States v. Acosta–Cazares*, 878 F.2d

945 (6th Cir.), cert. denied, —— U.S. ——, 110 S.Ct. 255, 107 L.Ed.2d 204 (1989). When applying § 3C1.1, a court should evaluate defendant's testimony and statements in a light most favorable to defendant. A false statement justifying an application for the two-level enhancement must be such that, if believed, it would tend to influence the issue under determination.

■■ At the second sentencing hearing the district court, in sustaining the government's position that a two-level increase was warranted commented:

I won't go into detail, but beginning with the not seeing drugs when a buy had been made in there; the implausibility of a dice game in that small area; having the full $50, rather than just part of it, would indicate that the defendant in fact had been given the $50 for whatever reason, the prerecorded funds; the defendant was not truthful, the changing of his testimony regarding Black coming up the stairs, and this heated confrontation in a 30 square foot small room between somebody and Dwayne Head, indicate in detail and the sum total of Mr. Stewart's testimony on these issues was not truthful and that he did in fact lie and cause an obstruction of justice at the trial in this case.

*Id.* at 30–31.

We have reviewed these comments and conclusions in light of the transcript of Stewart's testimony and we give due regard to the opportunity of a district court to judge the credibility of the witnesses. We must accept the findings of fact unless we find that they are clearly erroneous and we must further give due deference to the district court's application of the guidelines to the facts. Title 18 U.S.C. § 3742(e). We find no error in the two-level enhancement for obstruction of justice.

■■ Appellant's argument that the district court erred in imposing a two-level increase for possession of a firearm during the commission of the offense, USSG § 2D1.1(b)(1), need not delay us long.[6]

**6.** The transcript discloses that counsel made no

motion for a continuance to prepare to meet the

Although it is true that Stewart did not have physical possession of a firearm, there is no doubt that there were four firearms in the small apartment—two handguns and two sawed-off shotguns. Applying the "fortress analogy," *United States v. Henry, supra,* we have no difficulty deciding that Stewart was in constructive possession of at least one of the sawed-off shotguns which, according to his testimony, was laying on the couch in the room where he was seated. (T.E. II–106–107).

We find no error in the district court's application of the guideline two-level enhancement for possession of a firearm during the commission of the offense and we affirm the conviction and the sentence of appellant Stewart.

## EDWARD BLACK

Black's appeal presents three issues for review. He first argues that the district court erred when it denied his Rule 29 motion for judgment of acquittal. His second argument adopts the arguments of appellant Stewart relating to the refusal of the district court to give the requested limiting instruction concerning the firearms. His third argument attacks the refusal of the district court to award him a two-level reduction for acceptance of responsibility in determining his offense level.

■■■ When the SWAT team broke into the house and conducted the search, officers found appellant Black hiding under the staircase in the darkened cellar of the apartment. Also in the cellar, on a table, were 112 bags containing crack.

Whether Black ever left the basement between the time he arrived at the apartment and the execution of the search warrant is not entirely clear. What is abundantly clear, however, is that when the police found him he was in the basement in total darkness under the staircase and in proximity to 112 bags of crack.

Relying on a footnote in *United States v. Winston,* 687 F.2d 832 (6th Cir.1982), Black argues that since he was not shown to be in actual possession of the crack when apprehended, he cannot be convicted of aiding and abetting possession with intent to distribute. This argument will not withstand analysis.

In *Winston,* defendant's participation consisted of introducing a drug purchaser to a drug seller and accompanying them to the site of the transaction. The transaction took place in the seller's automobile in which the drugs were stored. In the case before this court, Black's presence in the confined area where the drugs were found would support an inference that he was in constructive possession of them.

■■■ We agree with appellant's argument that mere presence at the scene of the crime and guilty knowledge of the crime are not enough to convict a defendant of aiding and abetting. *United States v. Winston,* 687 F.2d at 835. See also *United States v. Bryant,* 461 F.2d 912 (6th Cir.1972). We also agree that it must be shown that appellant acted or failed to act with the specific intent to facilitate the commission of a crime by another. *Winston,* 687 F.2d at 835; *Bryant,* 461 F.2d at 920. We cannot agree, however, that the only conclusion that the jury could reach was that Black's participation was as an unwitting spectator. Although, as appellant argues, no witness saw Black holding the crack or exercising dominion over it, "it is not necessary that appellant actually touched or possessed the [crack]." *Winston,* 687 F.2d at 835.

There was evidence from which the jury could infer that Black acted with the intent to facilitate the drug transactions. He was in the basement with the crack close by. The persons in the basement had exhibited a determination to limit access to the base-

district court's announced intention to impose a two-level enhancement under § 2D1.1(b)(1). The fact that the district court granted a continuance for defendant to meet the government's claim of obstruction of justice leads us to be-

lieve that the district judge would have granted another continuance to enable appellant to prepare arguments to dissuade the court from its announced intentions.

ment as shown by their ordering Head to leave the basement even though he was the lessee of the premises. (T.E. I–79–80). Whether Black left the basement at any time before the raid may be the subject of conjecture, but what is clear is that he was sufficiently involved in the distribution that he was permitted either to come from and to go to the basement at will or to remain there unchallenged.

We find ample evidence to satisfy the teaching of *Jackson v. Virginia, supra,* and we affirm the conviction of Black.

We further adopt by reference what was written disposing of Stewart's arguments relating to the limiting instructions concerning the firearms and find Black's arguments equally unavailing.

■■■■ We now consider Black's argument that he was entitled to a two-level reduction for acceptance of responsibility. USSG § 3E1.1(a).

The commentary to § 3E1.1(a) is instructive. Among considerations to be included in the determination whether a defendant qualifies for the provision are voluntary and truthful admission to authorities of involvement in the offense and the timeliness of defendant's conduct of manifesting the acceptance of responsibility.

After trial and conviction Black was interviewed by a United States Probation Officer. He persisted in his denial that he was involved in the operation of a crack house, maintaining that he had gone to the apartment to purchase crack for his own use.

The Probation Officer based his recommendation for a two-level acceptance of responsibility adjustment on appellant's admission that he was in the crack house to purchase drugs and that he was apprehended while he was in the basement where the crack was found.

We agree with the district court that these two admissions hardly amount to acceptance of responsibility for the charges of which appellant was convicted. It appears to us that appellant has done no more than admit an offense with which he

was not charged and admit conduct which he could not deny.

Appellate review of the sentence is limited. Title 18 U.S.C. § 3742(e). In this case, even if our scope of review were plenary, we could find no error in the district court's refusal to grant a reduction for acceptance of responsibility. There is simply no misapplication of the guidelines.

We find no error entitling appellant Black to relief and we affirm his conviction and his sentence.

## DWAYNE HEAD

Appellant Dwayne Head entered a plea of guilty to Count 3 of the indictment and he now appeals a 235–month sentence imposed by the district court. Before addressing the six issues raised by appellant, a discussion of the background is in order.

On December 4, 1989, defendant appeared in the district court to withdraw his plea of not guilty and to enter a plea of guilty to Count 3 of the indictment charging him and the other four defendants with possession with intent to distribute approximately 30 grams of crack. The plea was pursuant to a plea agreement, the pertinent portion of which is as follows:

"4. Defendant DWAYNE E. HEAD agrees to testify truthfully and completely concerning all matters pertaining to the Indictment returned herein and to any and all other narcotics violations in which he may have been involved or as to which he may have knowledge. Defendant further agrees to provide a complete statement to authorities of the United States concerning such matters. Defendant agrees to submit to supplemental debriefings on such matters whenever requested by authorities of the United States, whether before or after his plea is entered.

The government agrees that, if the information supplied by the defendant merits it, a motion for substantial assistance will be filed pursuant to § 5K1.1 of the Federal Sentencing Guidelines. The defendant understands that the decision to file such motion rests solely with the United States Attorney.

Pursuant to § 1B1.8 of the Federal Sentencing Guidelines, the government agrees that any self-incriminating information so provided will not be used against the defendant in determining the applicable guideline range for sentencing, or as a basis for upward departure from the guideline range. The defendant understands that the final decision as to the applicable guideline range rests with the District Court.

\* \* \* \* \* \*

6. .... [s]hould Defendant, DWAYNE E. HEAD fail to comply fully with the terms and conditions set forth herein, this agreement is void and of no effect, and Defendant DWAYNE E. HEAD shall be subject to prosecution as if the agreement had never been made.

7. It is agreed that if the Court refuses to accept any provision of this Plea Agreement, neither party is bound by any of its provisions, Defendant DWAYNE E. HEAD may withdraw his guilty plea, and the United States Attorney for the Southern District of Ohio may proceed with prosecution pursuant to the Indictment without prejudice."

(J.App. pp. 13, 14).

The district court accepted the plea of guilty and continued the matter pending preparation and review of the presentence investigation (PSI).

At the trial of the remaining defendants, appellant had testified as a government witness. On March 1, 1990, after the trial was completed, the United States gave notice to appellant that it did not intend to file the USSG § 5K1.1 motion for a departure from the guidelines. (J.App. 16–17).

Section 5K1.1 provides in part: "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines."

The government's notice asserted that appellant failed to identify the co-defendants Stewart and Swanson at trial and that appellant's testimony failed to include most of the facts which he had disclosed in an interview with Detective Trout.

When appellant learned that the United States would not file a motion under USSG § 5K1.1, he moved to withdraw his plea of guilty as to Count 3 and go to trial on the charges against him.

F.R.Cr.P. 32(d) provides in part that, "the court may permit the withdrawal of the plea upon a showing by the defendant of any fair and just reason."

" 'The withdrawal of a guilty plea prior to sentencing is not an absolute right but is a matter within the broad discretion of the district court.' " *United States v. Spencer*, 836 F.2d 236, 238 (6th Cir.1987), quoting *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir.1978) (*per curiam*). In *Spencer* the Court articulated several factors for the district court to consider when evaluating whether a defendant has established a fair and just reason to withdraw his guilty plea.

One factor was the length of time between entry of the plea and the motion to withdraw it. A second factor to consider is why the grounds for withdrawal were not presented earlier. The third factor is whether a defendant has asserted or maintained his innocence, and a fourth factor is the circumstances underlying the plea, the nature and background of the defendant, and whether the defendant has admitted his guilt. *Spencer*, 836 F.2d at 239–40. We believe all of these factors militate against defendant's motion.

First, he did not attempt to withdraw his plea until after his testimony that led the United States to announce its intention not to move for a reduction for substantial assistance. Second, he has not maintained his innocence. Third, he is familiar with the criminal justice system as is evidenced by his lengthy criminal record, see *United States v. Kirkland*, 578 F.2d at 171–72, and he has admitted his guilt.

We reject appellant's argument that the promise of the United States to move for reduction under § 5K1.1 induced him to change his plea.

Appellant's reliance on *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), is misplaced. In *Santobello*, the promise by the prosecutor was unequivocal and unconditional. Not so here. The promise to appellant Head was conditioned on his truthful and complete testimony concerning all matters pertaining to the indictment and to other narcotics violations in which he was involved or of which he had knowledge. Further, the plea agreement specified that the decision whether to file a § 5K1.1 motion was within the full discretion of the prosecutor.

The United States Attorney and the district court determined that appellant had not fulfilled his obligations under the agreement and we agree with the district court that appellant cannot profit by his own breach of the plea agreement. We therefore affirm the denial of the motion to withdraw the plea of guilty.

■ Following denial of appellant's motion to withdraw his guilty plea, a PSI report was prepared to which appellant filed eight specific written objections. Three of those objections were resolved in favor of the appellant by the probation officer. Appellant then filed objections to the revised PSI report.

On March 2, 1990, a presentence conference was held for the purpose of discussing appellant's objections. At that conference the district judge participated, along with counsel for appellant, counsel for the government, and the probation officer. Regrettably, that conference was not transcribed by a court reporter and, at the sentencing hearing on March 13, 1990, memories of participants as to the events of March 2 were not consistent.

At issue in the sentencing hearing was the computation of criminal history points attributable to appellant. As to one of the contested prior convictions in the PSI report, the district judge recalled that the dispute was of no particular concern to him because he "was going to depart anyway and it really didn't make any difference so why argue about it any further than we did in the meeting." (Sentencing Hearing, p. 9). The district judge then announced that he had changed his mind and was not going to depart.

■ We believe it not appropriate for a sentencing judge to participate in a presentence discussion with counsel, and we are persuaded that what took place in that presentence discussion was misleading to appellant. The parties and the Court evidently did not recall in the same fashion exactly what took place, and that is one of the serious dangers of such discussions off the record.

The letter from the prosecutor to appellant's attorney indicates that after the conference in the judge's chambers, some issues had been resolved and others had not. Because of the uncertainties attendant to this procedure, we remand appellant Head's sentencing to the district court with directions to afford a full opportunity to defendant to address those parts of the sentencing which established base offense levels and criminal history categories higher than those recommended by the probation officer after the presentence conference in the judge's chambers.

The judgments are AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.