952 F.2d 404
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Johnny Lee MUKES, Defendant-Appellant.
 No. 90-6300.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The main issue in this appeal turns on the district court's application of 18 U.S.C. § 924(c)(1). That statute provides as follows:
 
 
 2
 "Whoever, during and in relation to any crime of violence or drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years...."
 
 
 3
 The defendant was convicted of, among other things, possessing cocaine with intent to distribute it. "During and in relation to" this drug trafficking crime, the jury found, the defendant "use[d] or carrie[d] a firearm;" on the strength of this finding, which was based on the presence of two handguns in a drawer where the defendant kept his supply of cocaine, the district court imposed an additional five year prison sentence pursuant to the provision quoted above.
 
 
 4
 Inviting us to reject the "broad" interpretation we have placed on § 924(c) in cases such as United States v. Henry, 878 F.2d 937 (6th Cir.1989), United States v. Acosta-Cazares, 878 F.2d 945 (6th Cir.), cert. denied, 493 U.S. 899 (1989), and United States v. Bronaugh, 895 F.2d 247 (6th Cir.1990), the defendant urges us to hold as a matter of law that the evidence in the instant case was not sufficient to establish a "nexus" between the firearms and the drug activity. Although the defendant's argument has some support in case law from other circuits, we do not find it persuasive; we shall affirm the district court's judgment in all respects.
 
 
 5
 * Pursuant to a warrant, officers from the organized crime unit of the local police department searched a house occupied by the defendant in Memphis, Tennessee. They found the defendant on the floor of a rear bedroom, where he appeared to have been doing some ironing. A search of the closed top drawer of a nightstand in the bedroom disclosed two plastic bags containing what proved to be 32.9 grams of cocaine. The officers asked the defendant where the cocaine came from, and he said that it had been brought to him the night before.
 
 
 6
 In the same drawer where the defendant had stashed the cocaine the officers found a loaded .38 caliber derringer and an unloaded .25 caliber automatic pistol. Neither of the firearms had been registered, it developed, and one of them turned out to have been stolen.
 
 
 7
 A federal grand jury returned a three count indictment against the defendant. Count 1 charged him with possession of the 32.9 grams of cocaine with intent to distribute it, a violation of 21 U.S.C. § 841(a)(1). Count 2 charged that during and relation to the foregoing offense, the defendant carried and used the .38 caliber derringer and the .25 caliber pistol in violation of 18 U.S.C. § 924(c). Count 3 charged the defendant with having been convicted of a series of felonies and with possessing the firearms in violation of 18 U.S.C. § 922(g), a statute that makes it unlawful for a convicted felon to possess any firearm "in or affecting commerce...."
 
 
 8
 A jury found the defendant guilty on all three counts. The trial court sentenced him to imprisonment for concurrent terms of 180 months on Counts 1 and 3. As to Count 2, the court imposed a consecutive sentence of 60 months. The defendant perfected a timely appeal.
 
 II
 
 9
 "In cases involving firearms found on premises under the control of a drug offense offender, the courts have developed a 'fortress analogy' theory, which holds that if it reasonably appears that the firearms found on the premises controlled or owned by a defendant and in his actual or constructive possession are to be used to protect the drugs or otherwise facilitate a drug transaction, then such firearms are used 'during and in relation to' a drug trafficking crime." United States v. Henry, 878 F.2d 937, 944 (6th Cir.1989), citing United States v. Matra, 841 F.2d 837, 843 (8th Cir.1988), and United States v. LaGuardia, 774 F.2d 317, 321 (8th Cir.1985). Accord United States v. Head, 927 F.2d 1361, 1366 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991).
 
 
 10
 Under Henry and the Sixth Circuit cases that have followed it, it seems to us that a rational jury could have concluded that the defendant's drugs and the guns were being kept in the same place to facilitate the protection of the former by the latter.
 
 
 11
 It is true, as the Court of Appeals for the District of Columbia Circuit pointed out in United States v. Bruce, 939 F.2d 1053, 1055 (D.C.Cir.1991), that possession of a drug with intent to distribute it in the future "is in a sense a passive crime...." Surely however, it is not analytically impossible for someone to use a gun in relation to the passive possession of drugs before the drugs are distributed. If a person who is in possession of drugs uses a gun to shoot someone who attempts to deprive him of possession, for example, such a use unquestionably comes within 18 U.S.C. § 924(c)(1). It is well established, moreover, that one can use a gun without displaying it; a drug dealer who keeps a loaded weapon with his drugs for the purpose of protecting his inventory is "using" the gun in relation to his drug crime regardless of whether he has occasion to brandish the weapon or fire it. See Matra, 841 F.2d at 842-43, and the cases there cited. As we said in Head, 927 F.2d at 1366, quoting Acosta-Cazares, 878 F.2d at 952, "[t]he terms 'uses' and 'carries,' in Section 924(c)(1), 'should be construed broadly to cover the gamut of situations where drug traffickers have ready access to weapons with which they secure or enforce their transactions.' "
 
 
 12
 The Court of Appeals for the Second Circuit pointed out in United States v. Feliz-Cordero, 859 F.2d 250, 254 (2d Cir.1988), that "section 924(c) requires more than mere possession of a firearm. Rather, there must be some relation or connection between the firearm and the underlying crime." But notwithstanding the "frequent connection between firearms and narcotics trafficking," id., the Feliz-Cordero court held that the necessary connection could not be inferred from the presence of a loaded .38 caliber Smith and Wesson revolver in the drawer of a dresser located in an apartment that also contained cocaine, drug records, $11,000 in cash, a beeper, and extra rounds of ammunition. We have noted elsewhere that this holding is difficult to reconcile with our circuit precedent. United States v. Jackson, No. 90-1609, 1991 U.S.App LEXIS 1757, at * 17 (6th Cir. Feb. 1, 1991). Insofar as there is a conflict, of course, and unless the Supreme Court or Congress should instruct us otherwise, we must follow our own precedents.
 
 III
 
 13
 At the time when it was discovered in the nightstand drawer, the loaded .38 caliber derringer had its barrel secured in place by a bolt with a nut on the end. (The bolt served as a substitute for a latch mechanism that had been removed.) The gun was capable of being fired, and there was testimony that an officer had test fired it with the bolt in place.
 
 
 14
 At the time when it was introduced in evidence at the trial, the derringer no longer had the bolt and nut in place. The defendant argues that without the bolt and nut, the derringer was not a "firearm" because it might have misfired or exploded if someone had tried to shoot it in this condition. The defendant also argues that without the bolt and nut, the derringer would have been "less accessible to a person intending to use it."
 
 
 15
 These arguments border on the frivolous. The bolt and nut were unquestionably in place when the weapon was found, and the weapon was unquestionably loaded and capable of being fired at that time. The fact that removal of the bolt might have made it more dangerous for someone to fire the weapon hardly means that what the officers found in the nightstand of the defendant's bedroom was not a firearm. The derringer was obviously a firearm, and we do not believe that it was unduly prejudicial for the jury to be allowed to see the gun without the bolt; the testimony made it very clear that the bolt was merely a safety device.
 
 
 16
 Although the defendant was the only person found in the house, he argues that there was no proof that he was in actual or constructive possession of the room in which he was found or of the weapons in the nightstand drawer. We reject these arguments as well; the evidence must be viewed in the light most favorable to the government, and the government is entitled to the benefit of all favorable inferences that may reasonably be drawn from the evidence. United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983). Under these principles, the jury was entitled to find that the defendant was in control of the room and its contents, just as it was entitled to find that the weapons were being kept in the nightstand drawer to help protect the drugs that had been delivered to the defendant the night before.
 
 
 17
 On the basis of what has already been said, finally, the conviction under 18 U.S.C. § 922(g) must be upheld; it is undisputed that the defendant had previously been convicted of a series of felonies, and if he "used" a firearm under § 924(c), he "possessed" the firearm under § 922(g).
 
 
 18
 AFFIRMED.