28 F.3d 1215
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Willie J. STOKES, Defendant-Appellant.
 No. 93-1668.
 United States Court of Appeals, Sixth Circuit.
 June 23, 1994.
 
 Before NELSON and NORRIS, Circuit Judges, ENGEL, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant appeals from his conviction for being a felon in possession of a firearm. He contends that erroneous evidentiary rulings made by the district court, as well as prosecutorial misconduct during closing argument, deprived him of a fair trial. He also attacks the sentence imposed by the trial court.
 
 I.
 
 2
 On August 6, 1991, state law enforcement officers executed a search warrant at a single-family house in Saginaw, Michigan. Defendant and a woman identified as Yvette Pritchett were the only occupants of the house at the time of the search. Police found two firearms--a .45 caliber pistol located on a bedroom nightstand, and a rifle hidden in a basement crawl space--along with ammunition for the rifle and a triple-beam scale. Authorities also seized more than $10,000 in cash.
 
 
 3
 Defendant was then charged with and convicted of a controlled substance offense in state court. Because several years before he had been previously convicted of a felony, a federal grand jury returned a single-count indictment that charged him with being a felon in possession of a firearm in violation of 18 U.S.C. Sec. 922(g)(1). A one-day trial ended in a conviction. The district court sentenced defendant to thirty-three months' imprisonment.
 
 II.
 A. Disputed Evidence
 
 4
 During trial, the district court permitted the government to introduce evidence of the seizure of the scales and cash. Defense counsel objected, contending that both items were irrelevant to the charged crime and that, even if relevant, were impermissibly prejudicial because they suggested to the jury that defendant engaged in drug trafficking.
 
 
 5
 Under the Rules of Evidence, relevance hinges on its "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Even relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Fed.R.Evid. 403. Furthermore, evidence of other acts is not admissible merely to show a criminal character. Fed.R.Evid. 404(b); see United States v. Blankenship, 775 F.2d 735, 739 (6th Cir.1985).
 
 
 6
 After considering defense counsel's objection, the district court offered the following grounds for permitting the government to introduce the disputed material:
 
 
 7
 [T]he house ... was searched in which there was more than one person living, Mr. Stokes was in control of certain aspects of that house which included places in which a large quantity of money plus firearms ... that are, I presume, his.... Now, to me that sounds like a basic showing of relevance with respect to the possessory element of this offense.... And I do not believe that the danger of unfair prejudice, that is to say with respect to the possible commission of other offenses, substantially outweighs its probative value.
 
 
 8
 This court reviews a trial court's evidentiary rulings with respect to relevance and prejudicial effect for abuse of discretion. United States v. Hawkins, 969 F.2d 169, 174 (6th Cir.1992), cert. denied, 113 S.Ct. 1021 (1993). Although a district corut must proceed with caution when authorizing the introduction of acts that imply other unrelated and uncharged criminal activity, we conclude that the court in this case exercised the requisite degree of care. No mention of drug trafficking was permitted and the court itself offered a plausible explanation of the relevance of the evidentiary material to the crime charged. Under the circumstances, no abuse of discretion occurred. See United States v. Hatfield, 815 F.2d 1068, 1072 (6th Cir.1987) (permitting admission of burglary paraphernalia in context of firearms prosecution).
 
 B. Adoptive Admission
 
 9
 The next issue raised by defendant involves a statement made by his companion, Yvette Pritchett, at the time of the search. Defendant, who had been advised of his Miranda rights, was seated at the kitchen table with Officer Arnold Burns when, according to Burns, Pritchett commented that "somebody must have squealed on us." Defendant did not respond to the remark.
 
 
 10
 Since Pritchett was not present during the trial, defense counsel objected to the testimony on hearsay grounds. However, her statement was admitted into evidence as an adoptive admission by a party. Rule 801 provides that a statement is not hearsay if a party "has manifested an adoption or belief in its truth." Fed.R.Evid. 801(d)(2)(B). The trial judge reasoned that defendant's reaction to the remark of looking at Pritchett, but remaining silent, could indicate just such an adoption:
 
 
 11
 I find that the statement under the particular circumstances that it was made is a statement which a reasonable person who was not involved in criminality on the day of the search would be reasonably expected to respond to negatively if he had heard it and actually been uninvolved.
 
 
 12
 Once the testimony was received, the court gave the jury a cautionary instruction.
 
 
 13
 This court has recognized that admissions adopted by silence pose troublesome questions, particularly after a defendant is in custody. See McCarthy v. United States, 25 F.2d 298, 299 (6th Cir.1928). Particularly where, as here, a defendant has been advised of his right to remain silent, "it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used [against him]." Doyle v. Ohio, 426 U.S. 610, 618 (1976). While Doyle was decided in the context of police questioning, this court has applied analogous reasoning to exclude ambiguous adoptions of statements made by a codefendant. See Fuson v. Jago, 773 F.2d 55, 61 (6th Cir.1985) (declining to find adoptive admission in custodial setting under Ohio Rules of Evidence), cert. denied, 478 U.S. 1020 (1986).
 
 
 14
 However, under the circumstances of this case, admission of Pritchett's statement under Federal Rule of Evidence 801(d)(2)(B) was proper since the statement and defendant's silence did not occur during the period immediately following recitation to him of Miranda warnings. Pritchett did not volunteer her statement until sometime after defendant had admitted purchasing the pistol and police officers had concluded interviews of the couple.
 
 C. Prosecutorial Misconduct
 
 15
 Defendant next contends that two remarks made by the prosecutor during closing argument constituted misconduct and deprived him of his right to a fair trial.
 
 
 16
 The first instance objected to involved the prosecutor's rhetorical question and response:
 
 
 17
 [H]ow else do we know beyond certainly [sic] any reasonable doubt that the defendant is guilty of the crime he's charged with? Well, we know it because he told us that he's guilty of the offense. When he was interviewed by Inspector Steffel and by Detective Burns that morning in the residence after being advised of his rights....
 
 
 18
 At that point, defense counsel objected and pointed out that defendant pleaded "not guilty" to the offense and that the prosecutor was mischaracterizing defendant's statement to police. The district judge reminded the jury that it was to determine defendant's guilt or innocence. The prosecutor then continued his argument by reviewing testimony by police officers that defendant admitted to them that he purchased the pistol at a market in Saginaw. Under these circumstances, we are unable to say the district court erred in the manner in which it responded to defense counsel's objection.
 
 
 19
 The second controversial comment by the prosecution arose during the government's rebuttal argument when the prosecutor remarked, "You've heard the expression he got off on a technicality." Defense counsel objected on the ground that the prosecutor had somehow vouched for defendant's guilt by suggesting that he should be convicted regardless of the law.
 
 
 20
 The comment was made in response to defense counsel's argument concerning the term "affecting commerce" as it applied to the interstate commerce aspect of the firearms charge. According to the defense, this element required a showing that business or trade was affected. The government's disputed remark, therefore, was offered in the context of a technical legal point made by the defense. While the reference to getting off on a technicality may have been ill-advised, defense counsel's objection and the trial judge's response to it adequately neutralized any potential the statement may have had for prejudicing defendant's cause.
 
 
 21
 In both instances, the prosecutor narrowed his focus after defense objection and intervention by the trial judge and clarified the intent of his remarks to avoid any misapprehension on the part of the jury.
 
 D. Sentencing Issues
 1. Criminal History
 
 22
 At sentencing, the district court announced its intention to depart upwards from what it referred to as defendant's criminal history category of III, since the court believed the score did not adequately reflect the extent of defendant's drug trafficking, the danger that he posed to the community, or the risk of repetitive behavior. After finding that category IV likewise failed to "represent the actual danger Mr. Stokes presents to this community," the court settled on category V.
 
 
 23
 This court reviews such an upward departure based upon a three-step analysis. United States v. Joan, 883 F.2d 491, 494 (6th Cir.1989); accord United States v. Head, 927 F.2d 1361 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991). As a first step, the reviewing court must ask, as a matter of law, whether the circumstances are sufficiently unusual to merit the departure. Second, did the conceptual circumstances used to justify the departure actually exist? And, third, did the district court act within the bounds of the reasonable discretion to which it is entitled? Id.
 
 
 24
 A review of the transcript from the sentencing hearing reveals that the trial court provided a thorough explanation for departure as required by 18 U.S.C. Sec. 3553(c)(2). Essentially, the court concluded that defendant had trafficked in crack cocaine with unremitting consistency and remorselessness and that this behavior, coupled with the possession of firearms, posed an extraordinary danger to the community. The court noted that defendant's first state conviction for drug trafficking occurred when he was twenty-two years of age, and pointed out that the conduct which led to his second state controlled substances conviction and this firearms conviction occurred while he was on parole for his first state conviction.
 
 
 25
 While this court shares the concerns of the district court, we are unable to conclude as a matter of law that the circumstances of this case are sufficiently unusual to warrant the upward departure. On the contrary, both the federal criminal code and sentencing guidelines have addressed themselves in depth to the problems posed by drug trafficking and firearms. See United States v. Robison, 904 F.2d 365, 370-71 (6th Cir.) (harm of crack to communities not type of special danger requiring departure), cert. denied, 498 U.S. 946 (1990).
 
 
 26
 It appears that the proper criminal history score was category IV, as computed in the presentence report dated March 30, 1993. That computation took into consideration defendant's two state controlled substances convictions, and the fact that he committed this firearms offense while on parole for the first state conviction, and less than two years after his release from prison on that conviction. Accordingly, while we share the trial judge's concern that the guidelines in effect at the time of the offense may have treated the offense too lightly, it is apparent that the aggravating circumstances recited by the judge were taken into consideration by the Sentencing Commission in formulating the guidelines, and were incorporated into the presentence report's calculation of defendant's criminal history. See United States v. Head, 927 F.2d 1361, 1367-68 (6th Cir.), cert. denied, 112 S.Ct. 144 (1991).
 
 2. Double Counting
 
 27
 The district court also enhanced defendant's base offense level by two points because of his possession of the rifle, which the trial judge characterized as an "extraordinary danger." The parties assume that this departure was authorized by U.S.S.G. Sec. 5K2.6 (1990).
 
 
 28
 Because possession of the rifle was charged in the indictment, that factor presumably contributed to the calculation of the base offense level. Any enhancement for its possession, therefore, would constitute impermissible double counting.
 
 III.
 
 29
 For the foregoing reasons, the conviction is hereby affirmed. Defendant's sentence, however, is vacated and the cause remanded for resentencing.