UNITED STATES of America, Plaintiff–Appellee (90–1096; 91–1503), Respondent–Appellee (91–1505),

v.

Robert HAWKINS, Defendant–Appellant (90–1096; 91–1503), Petitioner–Appellant (91–1505).

Nos. 90–1096, 91–1503 and 91–1505.

United States Court of Appeals, Sixth Circuit.

Argued May 11, 1992.

Decided June 8, 1992 *.

---

first defendant is served." *Brown v. Demco, Inc.,* 792 F.2d at 482.

* This decision was originally issued as an "unpublished decision" filed on June 8, 1992. On July 7, 1992, the court designated the opinion as one recommended for full-text publication.

F. William Soisson (argued and briefed), Office of the U.S. Atty., Detroit, Mich., for U.S.

Stuart L. Stein (argued and briefed), Santa Fe, N.M., for Robert Hawkins.

Before: BOGGS and NORRIS, Circuit Judges; and BERTELSMAN, Chief District Judge.**

PER CURIAM.

Defendant, Robert Hawkins, was indicted on three counts: possession with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1); possession of firearms in the course of a drug-trafficking crime in violation of 18 U.S.C. § 924(c); and possession of a firearm as a felon in violation of 18 U.S.C. § 922(g). At the initial trial, he was convicted on the third count, but a mistrial was declared as to the other counts because the jury was unable to reach a verdict. Defendant was convicted of the first two counts at a subsequent trial.

After sentencing, Hawkins filed motions for a new trial, which were denied. By an order of this court, defendant's direct appeal has been consolidated with his appeal from the denial of a motion to vacate sentence made pursuant to 28 U.S.C. § 2255, and the denial of a motion for new trial on the basis of newly discovered evidence. Hawkins now argues that: (1) he was not a felon for the purposes of 18 U.S.C. § 922(g) because his past offense only resulted in probation pursuant to a Michigan statute authorizing "probation without judgment of guilt" for first-time drug law offenders; (2) evidence confiscated from another man was improperly admitted into evidence at defendant's trial; (3) evidence discovered after the trial indicates that the govern-

** The Honorable William O. Bertelsman, Chief United States District Judge for the Eastern District of Kentucky, sitting by designation.

ment improperly suppressed evidence concerning potential witnesses who could have provided exculpatory information; and (4) the district court wrongly denied the section 2255 motion to vacate defendant's sentence based upon ineffective assistance of counsel, prosecutorial misconduct, and the illegality of the search warrant for his home. For the reasons that follow, we affirm the judgment of the district court.

## I.

For the purposes of this appeal, an abbreviated recitation of the facts will suffice. The government's confidential informant, Randy Ulmer, testified that he and William Clemons went to defendant's home on May 7, 1989 to purchase cocaine and observed a number of "kilos" in the basement of the residence. According to Ulmer, he removed several of the kilos for Clemons, and left money that Clemons had brought with him in a paper bag for defendant. On May 9, Ulmer gave this information to Jerome Sharpe, a West Bloomfield (Michigan) Township police officer assigned to the Oakland County Narcotics Enforcement Team. Officer Sharpe secured a search warrant for defendant's residence based in part on Ulmer's information; the affidavit for the warrant indicates that the informant told Officer Sharpe that he observed "between two and three hundred kilos" of pre-packaged bricks of cocaine at defendant's home.

On May 11, Officer Sharpe and other officers executed the search warrant and seized $1.2 million in cash, stored in luggage and an end table, as well as other valuable items and several firearms. Officer Sharpe testified that the officers also found cocaine residue in the containers where the money was located.

On May 22, 1989, Officer Sharpe arrested Clemons after purchasing a kilo of cocaine from him in a deal arranged by Ulmer. This kilo and its wrapper were introduced at Hawkins' trial, and Ulmer testified that the wrapping was done in the same manner and using the same material as that used for the kilos he carried from Hawkins' home on May 7.

## II.

### A. Prior Felony

Count III of defendant's indictment charged that he violated 18 U.S.C. § 922(g)(1) by possessing four firearms while having been "previously convicted of a crime punishable by imprisonment for a term exceeding one (1) year, that is Attempt [sic] Possession of a Controlled Substance." Section 922(g)(1) states: "It shall be unlawful for any person ... who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year ... to ... possess ... any firearm or ammunition...." Defendant argues that there was no evidence establishing that he was previously convicted of a crime punishable by imprisonment for more than one year.

The government put into evidence a Michigan court's order of probation indicating that defendant had been charged with attempted possession of cocaine but was sentenced to probation pursuant to section 333.7411 of the Michigan Compiled Laws, which allows a court to impose "probation without judgment of guilt" for first-time drug law offenders. Defendant was on probation under this statute at the time the federal indictment in the instant case was handed down. Attempted possession of cocaine is ordinarily punishable by more than one year in prison in Michigan. Therefore, the question before us is whether placing a defendant on probation pursuant to M.C.L. § 333.7411 constitutes a "conviction" for purposes of 18 U.S.C. § 922(g).

Section 333.7411 provides:

When an individual who has not previously been convicted [of a drug crime] pleads guilty to or is found guilty of possession of a controlled substance under [specified Michigan drug laws] ... the court, *without entering a judgment of guilt* with the consent of the accused, may defer further proceedings and place the individual on probation upon terms and conditions. Upon violation of a term or condition, the court may enter an adjudication of guilt and proceed as other-

wise provided. Upon fulfillment of the terms and conditions, the court shall discharge the individual and dismiss the proceedings. Discharge and dismissal under this section shall be without adjudication of guilt and is not a conviction for purposes of this section or for purposes of disqualifications or disabilities imposed by law upon conviction of a crime. . . .

M.C.L. § 333.7411(1) (emphasis added). Defendant argues that under this provision a person is not "convicted" until or unless there has been a violation of a term of probation and an adjudication of guilt. He argues that the contrary position, adopted by the district court, is "illogical and Kafkaesque," because under that interpretation the imposition of probation would be considered a conviction during the probation period and yet deemed not to be a conviction at a later time, *i.e.*, upon fulfillment of the terms of probation.

■ Because we agree with the district court that the placement of an individual on probation pursuant to M.C.L. § 333.7411 constitutes a conviction for these purposes, we affirm that court's judgment. In *People v. Preuss*, 436 Mich. 714, 461 N.W.2d 703 (1990), the Michigan Supreme Court, analyzing the requirement of three prior convictions for the application of a "fourth-time habitual-offender" statute, stated that " '[t]he conviction is the *finding* of guilt.' " *Id.* 461 N.W.2d at 711 (emphasis added) (quoting *People v. Funk*, 321 Mich. 617, 33 N.W.2d 95 (1948) (a conviction for which no sentence was imposed could be counted as one of the three prerequisite prior offenses)). Furthermore, as the district court pointed out, M.C.L. § 769.1(1) indicates that the conviction comes prior to the pronouncement of judgment or the sentence. That statute provides: "A judge of a court having jurisdiction is authorized and empowered to pronounce judgment against and pass sentence upon a person convicted of an offense in that court." It appears, therefore, that in Michigan, for purposes of statutes imposing penalties based in part on prior convictions, a person is deemed "convicted" upon a finding of guilt.

By its terms, M.C.L. § 333.7411 only applies when an individual "pleads guilty to or is found guilty of" specified statutes banning drug possession and use. As this constitutes a conviction under the rule derived from *Preuss*, *Funk*, and M.C.L. § 769.1(1), the evidence that defendant had been put on probation pursuant to section 333.7411 was sufficient to sustain the conviction under 18 U.S.C. § 922(g).

Defendant's protestations notwithstanding, there is nothing illogical about this interpretation. As we read it, the imposition of probation pursuant to section 333.-7411 requires an initial finding of guilt, and thus a conviction, but provides something akin to expungement if the defendant completes the probation without incident: the individual is discharged and the proceedings dismissed only "[u]pon fulfillment of the terms and conditions" of probation. Defendant concedes that he had not yet fulfilled the terms of his probation when he was indicted for the federal violations at issue here. There is nothing illogical about providing that a conviction may be expunged or vacated upon the successful completion of probation but not before or unless that occurs.

### B. Introduction of Cocaine and Wrapper From Clemons' Home

At trial, the government introduced both the kilo of cocaine and the wrapper confiscated from Clemons when he was arrested during a drug sale to Officer Sharpe on May 22, 1989, eleven days after the search of defendant's home. When shown this kilo and its wrapper at trial, confidential informant Ulmer testified that it was similar to those he observed and removed from defendant's home on May 7. Defendant argues that the government failed to connect the kilo or its wrapper to him, and that they should not have been admitted into evidence, as they were not relevant and their probative value was substantially outweighed by their prejudicial effect. Fed. R.Evid. 401–403. He also contends that the testimony of Ulmer and Sharpe concerning the arrest of Clemons should have been excluded.

It is unclear from the record whether the defense objected to the introduction of this evidence at trial, or whether objection was made only to the validity of the search warrant for defendant's home. However, assuming the proper objection was made, we cannot say that admission of this evidence was improper.

We review the trial court's determination of relevancy for abuse of discretion. *Selden Apartments v. United States Dep't of Housing and Urban Dev.*, 785 F.2d 152, 162 (6th Cir.1986). Evidence is relevant when it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401. The evidence at issue had probative value because the fact that Clemons had a kilogram of cocaine packaged in the same manner as those taken from defendant's residence makes it more probable that Clemons had received kilos of cocaine from defendant earlier, as described by Ulmer. In addition, the kilo and wrapper, as well as Sharpe's testimony concerning the arrest of Clemons, corroborated Ulmer's testimony that Clemons had access to kilogram quantities of cocaine, and lent support to Ulmer's testimony generally.

Having determined that the evidence was relevant, we must determine whether it should have been excluded under Fed.R.Evid. 403, which provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." The district court is granted "very broad" discretion in making this determination. *United States v. Vance*, 871 F.2d 572, 576 (6th Cir.), *cert. denied*, 493 U.S. 933, 110 S.Ct. 323, 107 L.Ed.2d 313 (1989) (citation omitted). While the kilogram of cocaine and its wrapper taken from Clemons may not have been greatly probative as to defendant's involvement in the deal described by Ulmer, it is hard to see any great prejudice resulting from the admission of this evidence, precisely because it was never strongly linked to defendant. The only question the government asked Ulmer about this evidence was whether it was "the type of packaging" he observed at defendant's house, to which Ulmer answered "Yes." Likewise, evidence concerning the arrest of Clemons did not greatly prejudice defendant. Therefore, we are unable to say that the admission of this evidence was an abuse of discretion. "[W]hether this court might have reached a different conclusion in a trial *de novo* is irrelevant if the district court acted within its discretion." *Id.* Furthermore, under these circumstances, even if admission of this evidence was erroneous, such error was harmless.[1]

## C. Motion for New Trial Based on Newly Discovered Evidence

Defendant appeals from the denial of his motion for a new trial based on newly discovered evidence made pursuant to Fed. R.Crim.P. 33, asserting that (1) the government suppressed the address of his and his wife's attorney, Alvin Brazzell/Glenn ("Glenn"), who could have testified that the vast amounts of cash and valuables confiscated from defendant's home and introduced at trial were the result of the $2 million settlement from a personal injury lawsuit, contradicting the government's theory that there were no legitimate sources of that wealth; (2) the government wrongly failed to disclose unsuccessful attempts to press Edward Hansard, a known drug dealer, to implicate defendant in wrongdoing, and evidence of this pressure would have furthered the defense theory that the government used an informant willing to fabricate a story implicating defendant in drug dealing so that it could confiscate his material wealth; and (3) the government wrongly failed to supply the defense with Clemons' post-arrest statement that his kilo of cocaine came from someone other than defendant.

1. Defendant's argument that the evidence should not have been admitted pursuant to Fed. R.Evid. 404(b) need not be addressed because the cocaine and its wrapper were not admitted as "other crimes" evidence.

Motions for a new trial based on newly discovered evidence are disfavored, and a trial court's determination that a new trial is not warranted will not be reversed absent a "clear abuse of discretion." *United States v. O'Dell*, 805 F.2d 637, 640 (6th Cir.1986), *cert. denied*, 484 U.S. 859, 108 S.Ct. 170, 98 L.Ed.2d 124 (1987). To obtain a new trial based on newly discovered evidence, a defendant must establish that:

(1) the new evidence was discovered after the trial;

(2) the evidence could not have been discovered earlier with due diligence;

(3) the evidence is material and not merely cumulative or impeaching; and

(4) the evidence would likely produce an acquittal.

*Id.* (citing *United States v. Barlow*, 693 F.2d 954, 966 (6th Cir.1982)).

The district court did not clearly abuse its discretion in refusing to order a new trial based on any of the three reasons put forth by defendant. First, defendant knew of the alleged lawsuit settlement prior to trial, and Glenn was not the only witness who could have testified regarding that lawsuit; in fact, the settlement was reached without his involvement. Thus, evidence concerning this lawsuit fails the *O'Dell* test: the settlement was not newly discovered and Glenn's statement was cumulative in light of defendant's access to other evidence of the settlement. *United States v. Seago*, 930 F.2d 482, 489 (6th Cir.1991) ("Where facts alleged in support of [a motion for new trial] ... were known by the defendant at the time of trial, the defendant failed to satisfy the newly discovered evidence requirement of Rule 33."); *United States v. Jones*, 712 F.2d 115, 122 (5th Cir.1983) (where defendants have ready access to exculpatory evidence they cannot complain that it was wrongly withheld by the government); *cf. O'Dell*, 805 F.2d at 641 (noting that "other courts ... have determined that the prosecution is under no duty to produce evidence that is available to a defendant").

Second, the post-trial discovery of Hansard's statement, that he was offered a deal if he could connect to defendant the $369,000 in cash in Hansard's possession, does not warrant reversal. Defendant argues that this was exculpatory *Brady* [2] material because it could have been used to impeach government informant Ulmer by showing that the government was pressing criminals into creating a story implicating defendant in a drug deal in order to confiscate his wealth.

In *O'Dell*, we stated that, in cases involving the suppression of evidence by the prosecution, the last prong of the four-prong test is modified and the defendant only needs to establish that the evidence is "material." 805 F.2d at 641. However, as the court in *O'Dell* explained, under *United States v. Bagley*, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985), the test of materiality depends on the nature of the evidence and the culpability of the government: where the prosecution knowingly uses false evidence, "the fact that the testimony is perjured is considered material unless failure to disclose it would be harmless beyond a reasonable doubt," *id.* at 680, 105 S.Ct. at 3382; otherwise, undisclosed evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.* at 682, 105 S.Ct. at 3383.

To assert successfully that the conviction was obtained with the use of testimony that the prosecution knew was false, the moving party must show that the statements were material, that they were actually false, and that the prosecution knew they were false. *O'Dell*, 805 F.2d at 641–42 (citing *United States v. Chagra*, 735 F.2d 870, 874 (5th Cir.1984)). At most, Hansard's statement might tend to show that the prosecution actively sought testimony from known drug dealers to incriminate defendant. This does not meet defendant's burden of showing that Ulmer's

**2.** *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

sworn testimony was false or that the government knew it was false.

█ Therefore, we must determine only whether there is a reasonable probability that, had the communication with Hansard been disclosed to the defense, the result of the proceeding would have been different. *United States v. White*, 861 F.2d 994, 997–98 (6th Cir.1988). Hansard's statement indicates that although law enforcement officers asked what he could "give" them on defendant and another man, he was never asked anything specifically about any drugs. Thus, contrary to defendant's assertion, such testimony would not have indicated that the officers applied "the third degree" in questioning Hansard. Furthermore, Ulmer was subject to cross-examination concerning his background and the circumstances under which he agreed to testify, and, as the district court stated, his "credibility was thoroughly tested" by defense counsel. In light of these factors, as well as the extensive incriminating evidence seized from defendant's home, we cannot say that there is a reasonable probability that the result of the trial would have been different had Hansard been able to testify to collaterally impeach Ulmer's testimony. *See United States v. Seago*, 930 F.2d at 491 (the mere existence of conflicting testimony that could have been used on cross-examination does not establish the fourth prong of the *O'Dell* test).

█ Defendant's third basis for asserting he has a right to a new trial is also unpersuasive. As the district court pointed out, Clemons' statement to Officer Sharpe upon arrest, indicating that his cocaine came from a man named Skip, was not newly discovered; the defense was probably aware of the statement because defendant was represented by the same counsel or the same law firm as Clemons. The district court also stated that this evidence, even if newly discovered, was not material. Again, defendant has not established that the government knowingly put on false testimony; it had no reason to believe the statement made by Clemons while being arrested rather than the testimony of Ulmer under oath. Therefore, the test for materiality is whether there is a reasonable probability that the result of the trial would have been different had Clemons' statement been disclosed.

Clemons did not testify for the government at defendant's trial, so the only relevance of the statement would be to cast doubt upon the possible inference that the particular kilo sold by Clemons to Officer Sharpe came from defendant. As discussed earlier, evidence of the connection between the cocaine and wrapper confiscated from Clemons and those seen at defendant's home was not particularly strong, and the inference that this cocaine and wrapper came from defendant was by no means essential to his conviction. Thus, the district court did not clearly abuse its discretion in holding that it is not reasonably probable that the result of the trial would have been different had Clemons' statement been presented to the jury.

### D. *Motion To Vacate Sentence*

█ Defendant argues that the district court erred in denying his motion to vacate sentence under 28 U.S.C. § 2255, filed after imprisonment following the second trial. Hawkins contends that he was entitled to relief because of ineffective assistance of counsel, prosecutorial misconduct, and the use of an illegal search warrant. We will take these up in reverse order. We note preliminarily that an order denying a motion to vacate will not be reversed unless that order contains "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill v. United States*, 368 U.S. 424, 428, 82 S.Ct. 468, 471, 7 L.Ed.2d 417 (1962).

Defendant argues that the district court improperly denied his motion to suppress evidence seized pursuant to the search warrant executed on his home, which was obtained from a Michigan state judge. He argues that the affidavit in support of the application for the search warrant inaccurately states that an investigator for the Wayne County Prosecutor's Office was unable to find any legitimate source, includ-

ing a lawsuit, for defendant's wealth; that confidential informant Ulmer had helped obtain federal indictments in the past; and that Ulmer observed two to three hundred kilos of cocaine in a room protected by a steel door.

None of these complaints provides grounds for reversal. First, the statement that no legitimate sources of defendant's wealth were found has not been shown to be untruthful, as the investigator reasonably believed that the alleged settlement of defendant's personal injury lawsuit was part of a scam to launder money. Second, Detective David Bergsma, the Michigan police officer referred to in the warrant, testified that he personally knew Ulmer for eight years, and that, as stated in the warrant application, Ulmer provided information which resulted in levies against individuals in a murdered friend's drug organization. Therefore, there was an adequate basis for crediting Ulmer's statements. Finally, the fact that no steel door or drugs were found in defendant's home does not make the search warrant invalid. Ulmer admitted at trial that he exaggerated the amount of cocaine he saw, but insisted that what he observed represented more kilos of cocaine than he had ever seen before, and that he believed there was a steel door in defendant's basement. In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court explained that the requirement that a search warrant be based upon a truthful showing of probable cause "does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct." *Id.* at 165, 98 S.Ct. at 2681.

> [P]robable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily.... [I]t is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

*Id.* In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court explained that the determina-

tion of probable cause is to be made in light of the totality of the circumstances. In the instant case, there has been no showing that the affiant, Officer Sharpe, did not believe Ulmer's statements to be true. In any case, based upon the totality of the circumstances, including the extensive asset check and the week-long surveillance of defendant's suspicious activities cited in the affidavit, we believe that the denial of defendant's motion to suppress was not improper.

Defendant's assertion of prosecutorial misconduct is based on the government's failure to turn over the post-arrest statement of Clemons, provide information regarding the personal injury lawsuit, and disclose the fact that Edward Hansard had been pressed to incriminate defendant in illegal activity. However, as we have already discussed, none of this comprised exculpatory *Brady* material which the government was obligated to disclose.

Finally, defendant claims that he was the victim of ineffective assistance of counsel at both trials, because his counsel: (1) had been convicted of a misdemeanor for willful failure to pay federal income taxes; (2) failed to object to the admission of the probation order used as evidence of defendant's past felony conviction for Count III; (3) failed to make a pretrial motion to suppress evidence obtained with the search warrant for his house; (4) failed to discover the identity of the confidential informant prior to trial; (5) failed to investigate or call alibi witnesses; (6) failed to seek discovery in the state forfeiture proceeding of documents that could account for defendant's wealth; and (7) was in a conflict of interest situation because his firm also represented Clemons.

The test for ineffective assistance of counsel claims is laid out by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984):

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the

defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Id.* at 687, 104 S.Ct. at 2064. For the most part, defendant makes the same arguments he made to the district court, and, having carefully reviewed the court's April 17, 1991 order denying the section 2255 motion, we affirm on the basis of that court's reasoning.

■ However, we will briefly address defendant's argument concerning his lawyer's failure to discover the identity of the confidential informant, because defendant asserts that the district court's reliance on the rule that defendants are not entitled to the names of government witnesses in advance of trial, *United States v. McCullah*, 745 F.2d 350 (6th Cir.1984), does not fully answer his contention. He argues that a competent attorney would have unearthed the identity of Ulmer by asserting an alibi defense, turning over names and addresses of its alibi witnesses prior to trial, and forcing the government to supply the names and addresses of witnesses it intended to use to rebut the alibi defense pursuant to Fed.R.Crim.P. 12.1.

However, while defendant describes an interesting way to attempt to learn the informant's identity prior to trial, counsel was by no means required to adopt this elaborate course of action in order to meet the level of competence required by the Sixth Amendment. As the Court stated in *Strickland,* "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" 466 U.S. at 689, 104 S.Ct. at 2065. Furthermore, as the district court pointed out, the prejudice prong of *Strickland* has not been met, because Ulmer was subjected to in-depth cross-examination, and there is no indication that learning of the informant's identity would have assisted defense counsel's attempt to impeach him.

For these reasons, we are unable to say that the district court's order denying defendant relief contains "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an omission inconsistent with the rudimentary demands of fair procedure." *Hill,* 368 U.S. 424, 82 S.Ct. 468.

### III.

For the reasons stated above, we affirm the judgment of conviction and the district court's denial of defendant's motions to vacate sentence and order a new trial.