52 F.3d 327
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Ronald J. PIKE, Defendant-Appellant.
 No. 94-5104.
 United States Court of Appeals, Sixth Circuit.
 April 20, 1995.
 
 Before: GUY, BOGGS, and SILER, Circuit Judges.
 
 
 1
 Pike appeals his conviction for one count of violating 18 U.S.C. Sec. 922(o),[1] which makes it unlawful for any person to transfer or possess a machinegun. We find no merit in the issues Pike raises on appeal, and we affirm Pike's conviction.
 
 
 2
 * Pike was convicted for possession of machineguns found in a search executed on August 25, 1992, during the investigation of a civil rights case,[2] also before us on appeal. Pike was a former Jefferson County police officer who worked at Resthaven cemetery and for Special Services, a detective agency. During the BATF and IRS investigation of Resthaven, Special Services, and the false arrest of Ricky Pardue, these agencies obtained a search warrant for Pike's house.
 
 
 3
 The warrant authorized seizure of a "fully automatic unregistered M-2 carbine." On entering the house, officers asked Pike whether there were weapons in the house, and Pike directed the officers to the bedroom. Officers found an automatic M-1 and a Mac-11 machinegun in the bedroom, the M-1 in the closet and the Mac-11 in a nightstand.
 
 
 4
 The Mac-11 was registered to George Tingley. Tingley testified that he purchased the gun in 1989 after approval from the federal government. Tingley testified that he placed it in Pike's nightstand to store it after the sale of Resthaven. Tingley also testified that he knew it was legal for him to possess the gun, but was not aware of any restrictions on where he could store the weapon.
 
 
 5
 Pike testified that he purchased the M-1 in 1970 when he was a police officer, and his sergeant, Charles Topp, helped him convert it to fully automatic. Charles Topp testified that the difference between an M-1 and an M-2 is that the M-1 is a semi-automatic firearm, while an M-2 is fully automatic. Topp testified that he purchased a used M-1 from the Jeffersontown Police Department in 1970, and that Pike also purchased an M-1 at that time. Topp testified that a month after the purchases he spoke with Pike about how to convert an M-1 to a fully automatic weapon. Topp then located the necessary parts for Pike, but could not recall whether he assisted with a conversion, and stated that he never discussed the conversion with Pike again. Topp also testified that police department policies would have prevented Pike from carrying the M-1 on duty. Pike never registered the M-1.
 
 
 6
 Pike was tried and convicted of one count of illegal possession of a machinegun in violation of 18 U.S.C. Sec. 922(o).
 
 II
 
 7
 Pike first argues that the court erred by not dismissing the case for failure to grant him a speedy trial. Pike was indicted November 2, 1992, and pled not guilty on November 17, 1992. On January 19, 1993, the Government moved for a continuance pursuant to 18 U.S.C. Sec. 3161(h)(3)(A), because an essential witness, Charles Topp, would not be available on the trial date, January 27. The affidavit supporting this motion, which contained Topp's name, was filed under seal. Pike objected at the time, but did not mention the Speedy Trial Act in his first objection. The court granted the government's motion in an order entered January 27. Pike next objected to the continuance immediately before the beginning of trial on February 22, but failed to move for dismissal of the indictment during this oral objection. After the trial was over, Pike filed a motion to dismiss the indictment for failure to grant a speedy trial on March 22.
 
 
 8
 Pike did not preserve this issue for appeal, because he failed to move for dismissal prior to trial as required under 18 U.S.C. Sec. 3162(a)(2). Section 3162(a)(2) provides that, if a defendant is not brought to trial in time, "the information or indictment shall be dismissed on motion of the defendant....
 
 
 9
 Failure of the defendant to move for dismissal prior to trial or entry of a plea of guilty or nolo contendere shall constitute a waiver of the right to dismissal under this section." (Emphasis added.) The record indicates that Pike objected to the continuance, but did not make a formal motion for dismissal before trial.
 
 III
 
 10
 Pike claims that the prosecution committed misconduct when it introduced a forged contract and a forged receipt into evidence. Pike argues on appeal that by offering these items, the prosecution deliberately injected uncharged offenses into the trial.
 
 
 11
 It does not appear that contemporaneous objections were made to these offers of evidence. "[I]mproper comments made by the prosecutor without objection from Appellant ... we review only for plain error." United States v. Carroll, 26 F.3d 1380, 1383 (6th Cir.1994); United States v. Young, 470 U.S. 1, 15 (1985) (plain errors are "particularly egregious errors" that "seriously affect the fairness, integrity, or public reputation of judicial proceedings.").
 
 
 12
 We hold that the introduction of evidence of contracts between Tingley and Pike was not prosecutorial misconduct amounting to plain error. Evidence of potential bias of a witness is relevant evidence. United States v. Abel, 469 U.S. 45, 51 (1984). The prosecution introduced contracts that it believed were forgeries, not for the truth of the matters contained within the contracts, but to show that Tingley and Pike had colluded in the past, and that Tingley would be inclined to falsify his testimony in Pike's favor. If the contracts were genuine, then this could also show Tingley's bias in favor of Pike as a business partner. After the documents were offered into evidence, the court admonished the jury that they were admitted only to show bias.
 
 
 13
 During cross-examination of Debra Pike, the government showed her the same contracts, without objection by the defense. Debra Pike said the signature looked like hers, but denied having ever seen the contract before. Admission of these items, accompanied as they were by an admonishment to the jury, was not plain error.
 
 
 14
 We also hold that the comparison made by the prosecution during closing argument was not misconduct. In this comparison, the prosecution demonstrated that the signature on a copy of a receipt that Pike produced for his M-1 matched exactly the signature on an original receipt produced by a witness. The witness's receipt had been provided to defense counsel before trial. The prosecution purported to demonstrate that Pike's receipt was actually a doctored copy of the witness's receipt. We find that the prosecution's display was an effective comment on the authenticity of Pike's evidence, not misconduct. United States v. Drake, 885 F.2d 323, 324 (6th Cir.1989), cert. denied, 493 U.S. 1049 (1990).
 
 IV
 
 15
 Pike argues that the court committed reversible error by not granting his motion for a new trial under Fed.R.Crim.P. 33, based on newly discovered evidence. Pike argues that evidence came to light during the later trial of the civil rights case showing that confidential informants (David Tingley and Gary Epley) had provided false evidence against Pike. Pike claims that Epley recanted his previous statement implicating Pike in a plan to murder a London, Kentucky, state trooper. Pike also claims that Epley misinformed David Tingley that Pike possessed audio tapes that contained a discussion of the Pardue false arrest, and David Tingley repeated this information to BATF. Pike notes that BATF relied on both pieces of information when it requested the search warrant for Pike's house. Pike argues that he could not move to suppress the evidence seized under the warrant earlier, because proof of the unreliability of Epley's statements only surfaced during the civil rights trial.
 
 
 16
 Pike also argues that newly discovered evidence indicates that he was prosecuted in violation of his equal protection rights. He states that another person who stored weapons for George Tingley, namely Steve Foster, was not prosecuted. This, Pike insists, demonstrates that he was selectively prosecuted in violation of his equal protection rights.
 
 
 17
 We review for abuse of discretion a trial court's denial of a motion for a new trial based on newly discovered evidence. United States v. Seago, 930 F.2d 482, 488 (6th Cir.1991). A new trial should only be granted when: (1) the new evidence was discovered after the trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material; and (4) the evidence would likely produce an acquittal. United States v. Hawkins, 969 F.2d 169, 175 (6th Cir.1992) (citing United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987)).
 
 
 18
 We find that the evidence Pike relies on as "newly discovered" does not meet this test. Pike would be in the best position to know whether he was involved in the events in which Epley falsely implicated him, and whether he possessed the tapes. Pike's equal protection argument should also fail. George Tingley was available to Pike, and with due diligence Pike could have made this equal protection argument during his own case, without waiting for Tingley to testify in the civil rights case that he stored similar guns with Steve Foster at Special Services.
 
 
 19
 Furthermore, Pike would probably not have been acquitted even if he had raised these issues. The court had sufficient other evidence to justify issuing the warrant without the statements at issue. Furthermore, Pike's equal protection argument would probably not defeat his conviction, because it does not appear that the government selected him for prosecution for invidious reasons. United States v. Sammons, 918 F.2d 592, 600 (6th Cir.1990) (citing United States v. Hazel, 696 F.2d 473, 474 (6th Cir.1983)).
 
 V
 
 20
 Pike claims that the prosecution must prove beyond a reasonable doubt that Pike knew that Tingley's Mac-11 was a machinegun in order to convict him under Sec. 922(o), based on Staples v. United States, 114 S.Ct. 1793 (1994). Pike argues that the government introduced no evidence that he had ever fired the gun or could identify the Mac-11 as an automatic, just that he was storing it for George Tingley. The court did not instruct the jury that they had to find that Pike knew the guns were machineguns. However, Pike did not object to the instructions, or offer his own instructions at trial.
 
 
 21
 The court's failure to instruct the jury on an essential element of the offense would justify vacating Pike's conviction and remanding for a new trial if the error were not harmless. See United States v. Ross, 40 F.3d 144, 146 (7th Cir.1994) (following Staples, remanding conviction under 26 U.S.C. Sec. 5861 because jury not instructed that it must find defendant knew weapon was automatic to convict). Pike did not object to the court's instructions, so we review for plain error. United States v. Olano, 113 S.Ct. 1770, 1776 (1993).
 
 
 22
 We need not reach the issue of whether Staples is applicable to convictions under Sec. 922(o). We find that any error with regard to this gun alone would fall short of plain error, because Pike was convicted on a single count, which can be supported by possession of either the M-1 or the Mac-11. Id. at 1778; United States v. Young, 470 U.S. 1, 16 & n. 14 (1985).
 
 VI
 
 23
 In conclusion, we find that none of Pike's issues on appeal require reversal. The district court's judgment of conviction for one count of possession of a machinegun in violation of Sec. 922(o) is AFFIRMED.
 
 
 
 [1]
 Section 922(o) reads:
 (o)(1) Except as provided in paragraph (2), it shall be unlawful for any person to transfer or possess a machinegun.
 (2) This subsection does not apply with respect to--
 (A) a transfer to or by, or possession by or under the authority of, the United States or any department or agency thereof or a State, or a department, agency, or political subdivision thereof; or
 (B) any lawful transfer or lawful possession of a machinegun that was lawfully possessed before the date this subsection takes effect.
 
 
 [2]
 United States v. Epley, Pike, Goodman, 94-5100, 94-5101, 94-5102, 94-5179, 94-5181, argued Feb. 2, 1995