82 F.3d 419
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Anthony MEDINA, Defendant-Appellant.
 No. 95-1570.
 United States Court of Appeals, Sixth Circuit.
 April 17, 1996.
 
 Before: GUY, NELSON, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant, Anthony Medina, was convicted in February of 1991 of conspiracy to distribute and distribution of cocaine and heroin and use of a communication facility in connection with his drug trafficking activities. Defendant's post-trial motion for a new trial based on newly discovered evidence was denied. On appeal, he alleges the district court abused its discretion in denying the motion. Based on our review of the record and arguments presented, we affirm.
 
 I.
 
 2
 On March 10, 1992, a private investigator hired by one of Medina's codefendants, Neville King, interviewed June Jackson in prison. Jackson was an unnamed coconspirator of King and Medina and had testified as a government witness in their criminal trial. See United States v. Medina, 992 F.2d 573, 577 (6th Cir.1993), cert. denied, 114 S.Ct. 1049 (1994). At trial, on direct examination, Jackson had failed to identify King as a participant in certain drug purchases that had taken place in California. The next day, on re-direct examination, however, she did identify him. According to an affidavit sworn to by the investigator, Jackson claimed that her identification on re-direct was partially the result of talking to counsel for the government after her cross-examination was completed. She further indicated that despite her testimony, she was not completely certain of her identification. At no time during her testimony or in the interview, however, did she equivocate regarding the identity of Anthony Medina and his presence during various drug transactions.
 
 
 3
 In addition, in November 1994, Kenneth Sasse, attorney for codefendant Nathaniel Wilson, spoke with Fred Jackson. Fred Jackson is the husband of June Jackson and was also a witness for the prosecution at the criminal trial. According to an affidavit sworn to by Sasse, Fred Jackson recanted his testimony about Medina's involvement in the California drug purchases, saying that Medina " 'didn't have nothing really to do with it.' " (App. at 208.) Jackson said that he had seen Medina at a car lot in California but that Medina was not present at any of the narcotics deals. The Sasse affidavit further recounted Fred Jackson's statement that prior to trial the Jacksons had met with FBI agents. At that meeting, the Jacksons differed over the number of California transactions: Fred Jackson indicated that there had been only one while June Jackson recalled two. Jackson agreed to go along with his wife's recollection of events, however, because she had threatened to forbid him from seeing his children if he did not cooperate.
 
 
 4
 Based on these two affidavits of the investigator and attorney--no affidavit attesting to any of the facts alleged in support of defendant's motion was ever produced from the alleged declarants, June and Fred Jackson--Medina sought a new trial under Fed.R.Crim.P. 33.[1] The district court denied the motion and Medina now appeals.
 
 II.
 
 5
 The denial of a motion for new trial based on newly discovered evidence will not be reversed absent a " 'clear abuse of discretion.' " United States v. Hawkins, 969 F.2d 169, 175 (6th Cir.1992), cert. denied, 506 U.S. 1069 (1993) (quoting United States v. O'Dell, 805 F.2d 637, 640 (6th Cir.1986), cert. denied, 484 U.S. 859 (1987)). To justify a new trial on these grounds a movant must show: "(1) the new evidence was discovered after trial; (2) the evidence could not have been discovered earlier with due diligence; (3) the evidence is material and not merely cumulative or impeaching; and (4) the evidence would likely produce an acquittal." 969 F.2d at 175.
 
 
 6
 We first consider the investigator's affidavit and its allegations regarding June Jackson's identification testimony of Neville King. As defendant concedes, the substance of her statements to the investigator "went primarily to the identification of Neville King." Medina argues, nevertheless, that the revelations in the affidavit could have been used at the time of trial for impeachment purposes. As the test for granting new trials makes clear, however, such proffered evidence must be material. June Jackson, despite her equivocation regarding King's identity, did not recant her testimony in which she had consistently and unequivocally identified Medina as a participant in the transactions. Moreover, her equivocation as to King's identity is not new evidence as it was apparent at the time of trial.
 
 
 7
 The allegations in the Sasse affidavit fall short for similar reasons. Medina claims that the revelations contained therein "clearly negate Anthony Medina's involvement in any transactions in California with the Jacksons." In challenging false testimony for purposes of seeking a new trial, a defendant must show that (1) the testimony is false; (2) without it the jury might have reached a different conclusion; and (3) the party seeking the new trial did not know of its falsity until after the trial. Gordon v. United States, 178 F.2d 896, 900 (6th Cir.1949), cert. denied, 339 U.S. 935 (1950). Assuming Fred Jackson lied about Medina's presence at the California purchases, Medina had to have known this at the time of trial.
 
 
 8
 Moreover, Medina's participation in the California purchases was not material to his conviction. Three other coconspirators, in addition to the Jacksons, testified to Medina's involvement in the drug trafficking organization. Medina, 992 F.2d at 577. For example, coconspirator Ken Echavarria, Medina's partner and drug courier, testified about numerous cocaine transactions involving Medina. Several tape-recorded conversations were introduced at trial in which Medina discusses his prior drug transactions with coconspirators. Indeed, Medina was arrested after attempting to sell three kilograms of cocaine to undercover officers in California. In addition, during a five month period in 1988, $430,000 was seized from Medina while he was in the company of other coconspirators. Id. at 578.
 
 
 9
 Medina also contends that the government's failure to disclose its "coaching" of June Jackson's testimony and Fred Jackson's alleged pretrial statements that Medina had not been involved in any California transaction violated the dictates of Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the Supreme Court held that suppression by the prosecution of evidence favorable to an accused violates due process when the evidence is material to guilt or punishment. Id. at 87. Brady applies to evidence affecting credibility when the " 'reliability of a given witness may well be determinative of guilt or innocence.' " Giglio v. United States, 405 U.S. 150, 154 (1972) (quoting Napue v. Illinois, 360 U.S. 264, 296 (1959)).
 
 
 10
 We find no error. First, none of June Jackson's statements to the investigator or her equivocation regarding King's identity are material to the guilt of Medina. As for Fred Jackson's alleged pretrial statements, Jackson was not a witness whose testimony was "determinative of guilt or innocence."
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 A motion for new trial based on newly discovered evidence was originally filed by Neville King in May 1992, based on the private investigator's affidavit recounting his interview with June Jackson. Medina filed a "notice of joinder" in that motion the following month. The district court ordered the motion held in abeyance during pendency of defendants' direct appeal. Following disposition of these appeals, in December 1994, Medina filed a supplemental memorandum in support of the motion for new trial and requested a hearing and oral argument. He appended to this memorandum attorney Sasse's affidavit in further support of the motion