NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 07a0312n.06
Filed: May 7, 2007

No. 05-6163

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | EASTERN DISTRICT OF TENNESSEE |
| BOBBY EDWARD HARVEY, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

**BEFORE: ROGERS, GRIFFIN, Circuit Judges; RUSSELL, District Judge[*]**

**RUSSELL, District Judge.** Defendant-Appellant Bobby Edward Harvey appeals his

conviction and sentence in the Eastern District of Tennessee challenging the district court's decision

that: 1) the search warrant established probable cause; 2) certain evidence was admissible; and 3)

the career offender provisions of the Sentencing Guidelines were applicable to the defendant.

**BACKGROUND**

On February 9, 2004, Detective Brian Ashburn of the Hamilton County Sheriff's Office

applied for and received a warrant to search defendant's residence located on Thatcher Road,

Hamilton County, Tennessee, for evidence of methamphetamine use, distribution, and

---

[*]The Honorable Thomas B. Russell, United States District Judge for the Western District
of Kentucky, sitting by designation.

manufacturing. In his affidavit in support of the application for the search warrant, Detective Ashburn indicated that information concerning defendant's suspected activity came from Detective Sneed of the Soddy Daisy Police Department who had received his information from a confidential source. Detective Sneed had known this source for at least five years and the source had provided him reliable information in the past leading to the arrest and conviction of suspects charged with criminal offenses. The source related that defendant and defendant's sister and daughter, who also lived at the residence, were involved in the manufacture of methamphetamine. The source also stated that defendant was involved in the manufacture of methamphetamine at an unknown location. The source had been on the premises several times in the last few weeks and had observed defendant distributing methamphetamine and marijuana. The source had been at the defendant's residence within seventy-two hours prior to the submission of the affidavit and had observed defendant in the possession of methamphetamine and marijuana. Detective Ashburn had also contacted the Electric Power Board and found that the power at the residence was listed in the name of defendant's son-in-law.

In the affidavit, Detective Ashburn indicated that he was familiar with defendant through other methamphetamine-related investigations. Detective Ashburn also related his familiarity with defendant's sister and daughter. Detective Ashburn included defendant's criminal history in the affidavit, detailing defendant's four prior arrests for methamphetamine offenses.

The magistrate judge rejected the challenges raised by the defendant to the warrant. The magistrate judge found that the warrant was timely signed and executed, the description provided of the location was sufficiently specific, the oath and affirmation met Fourth Amendment requirements, the information contained in the affidavit established probable cause, and the information provided by the informant was not stale. The district court overruled defendant's

objections and agreed with the magistrate judge's Report and Recommendation.

The warrant was executed on February 13, 2004. Defendant was advised of his Miranda warning rights and indicated that he understood them. When asked if there were any narcotics in the residence, defendant indicated that there were and told law enforcement that they were located in a box in his bedroom. The locked box contained a film canister, a Tylenol bottle, a prescription pill bottle wrapped in black electric tape, a pocket knife, several folded up coffee filters which contained methamphetamine residue, rolling papers, five baggies containing methamphetamine, and a small bag of marijuana. Laboratory analysis confirmed that the methamphetamine weighed a total of 16.8 grams. Detective Ashburn testified that coffee filters, such as that in the possession of the defendant, are used in methamphetamine labs for a variety of manufacturing purposes. Special Agent Croxby Jones of the Drug Enforcement Administration also testified that coffee filters are frequently used in methamphetamine manufacture and described their use in that process. In defendant's bedroom, law enforcement found digital scales, a box of sandwich baggies, two hypodermic syringes, a police scanner, a mirror with methamphetamine, and personal papers addressed to the defendant.

Based on his training and experience with methamphetamine manufacturers, dealers, and users, Detective Ashburn testified as an expert as to the manner in which methamphetamine is bought and sold, the prices charged for specific quantities, and the connection between using, manufacturing, and distributing methamphetamine. Detective Ashburn also testified that most drug dealers keep notes of drug customers who owe the dealer money and described, from his experience, what these notes looked like. Over defense objection, Detective Ashburn testified that some papers

found in defendant's wallet were consistent with drug records.[1]  Detective Ashburn also testified over defense objections that based on the packaging of the methamphetamine, the scales, and the amount and value of the finished methamphetamine, defendant possessed the methamphetamine with the intent to distribute.   Special Agent Jones also testified based on his experience with methamphetamine that defendant possessed the methamphetamine with the intent to distribute, basing his opinion on the packaging of the methamphetamine and its close proximity to plastic baggies and scales.

At trial, defendant took the stand and admitted that the methamphetamine found at the residence was his.  Defendant denied that he intended to sell the methamphetamine, stating that he possessed the drugs for personal use.  Defendant stated that he received the coffee filters from the person from whom he purchased methamphetamine and that he would use the residue methamphetamine in the filters.

On cross-examination, defendant admitted that he had prior felony convictions involving methamphetamine and pseudoephedrine.  Defendant admitted obtaining pseudoephedrine for his supplier so that the supplier could cook methamphetamine and provide it to him in exchange for his help.  Although defendant stated that he was not presently selling methamphetamine, he admitted that he had sold methamphetamine off and on for the past fifteen years to feed his habit.  Defendant stated that his sister and daughter are married to methamphetamine cooks and that his sister and girlfriend are users of methamphetamine.  Defendant testified that the notes found in his wallet referred to people that he knew or worked with who owed him money.  Defendant denies that he was owed this money for drugs; instead he stated that it was simply for money that he had loaned out.

---

[1]On cross-examination Detective Ashburn conceded that he did not know the individuals listed on the notes found in defendant's wallet and did not know who wrote the notes or if they had any relationship to drug transactions.

The jury found defendant guilty of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C).

Defendant appeared for sentencing on July 25, 2005. He objected to the application of the career offender guideline. Through counsel, defendant conceded that he had served time for a prior armed robbery offense, but denied that he pled guilty to the armed robbery and aggravated assault convictions listed in the Presentence Report. Defendant took the stand and told the district court that he did not remember pleading guilty to the armed robbery offense or the related aggravated assault convictions in 1984. On cross-examination, defendant conceded that he might have either been found guilty or pled guilty to the offenses, but that he could not remember. After reviewing court documents evidencing defendant's convictions, the district court found that the Presentence Report was accurate as to the defendant's criminal history and that the career offender provision applied. The district court, noting that the Guidelines were advisory, sentenced defendant to 262 months, the minium guideline career offender range.

## ANALYSIS

### I.    MOTION TO SUPPRESS

Defendant argues that the district court erred in denying his motion to suppress evidence seized from his residence because the search warrant was lacking in probable cause. Specifically the defendant argues that Detective Ashburn's affidavit in support of the search warrant was based on information from a confidential source that Detective Ashburn failed to show was reliable, that nothing in the affidavit or testimony of Detective Ashburn indicated that defendant was a resident of the location, and that the information contained in the affidavit was stale.

This court reviews the issuing judge's determination of probable cause with "great deference" and will only reverse the decision if it is arbitrarily made. *United States v. Johnson*, 351 F.3d 254,

258 (6th Cir. 2003). "Probable cause exists when there is a fair probability, given the totality of the circumstances, that contraband or evidence of a crime will be found in a particular place." *Id.* (quoting *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001)). "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)).

The Supreme Court has stated that information provided by a proven and reliable informant, along with police corroboration of the tip, is sufficient to establish the necessary probable cause. *McCray v. Illinois*, 386 U.S. 300, 304 (1967). Here, the confidential source on which law enforcement relied had been known to Detective Sneed for five years and had provided reliable information leading to the arrest and conviction of suspects charged with criminal offenses. Additionally, Detective Ashburn ascertained that the power at said residence was in the name of defendant's son-in-law and the confidential source indicated that defendant had been observed at the residence over several weeks with methamphetamine. The information provided by the confidential source established probable cause to believe that evidence of the defendant's criminal activity would be found at that residence. *See Johnson*, 351 F.3d at 258. The fact that the reliability of the informant was not verified by the affiant, but rather by another law enforcement official, is not of consequence. *See United States v. Hawkins*, 969 F.2d 169, 177 (6th Cir. 1992) (statements from confidential informant provided credible information to establish probable cause for search warrant where confidential informant was used by other non-affiant officer for eight years and had previously provided information resulting in levies).

"Because probable cause to search is concerned with facts relating to a presently existing condition, there arises the unique problem of whether the probable cause which once existed has grown stale." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (internal quotations

omitted). Whether information contained in an affidavit is stale must be determined by the circumstances of each case. *Sgro v. United States*, 287 U.S. 206, 210-11 (1932). These circumstances include the character of the crime, the criminal, the thing to be seized, and the place to be searched. *Spikes*, 158 F.3d at 923. Here, the most recent information provided by the informant was less than seventy-two hours old at the time Detective Ashburn subscribed to the affidavit, and set forth an ongoing pattern of criminal activity. The circumstances of this case indicate that the probable cause did not become stale within the time the confidential informant provided the information and the time that the search warrant was executed. *See Johnson*, 351 F.3d at 259-60 (finding no grounds for a staleness challenge where informant observed drugs seventy-two hours prior to issuance of the search warrant); *see also United States v. Finch*, 998 F.2d 349, 352 (6th Cir. 1993) (finding affidavit stated probable cause to search defendant's residence where reliable informant stated that within five days of warrant's issuance he had seen defendant storing and selling cocaine within the residence). The district court did not err in denying the motion to suppress.

## II.     EVIDENTIARY ISSUES

A district court's evidentiary rulings, including a decision to admit expert testimony, are reviewed under an abuse of discretion standard. *United States v. Wesley*, 417 F.3d 612, 620 (6th Cir. 2005); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 139 (1997). Under this standard, the Court will leave rulings on the admissibility of evidence undisturbed unless the Court is left with the "definite and firm conviction that the [district court] committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors or where the [district court] improperly applies the law or uses an erroneous legal standard." *Paschal v. Flagstar Bank, FSB*, 295 F.3d 565, 576-77 (6th Cir. 2002) (quoting *Huey v. Stine*, 230 F.3d 226, 228 (6th Cir. 2000)).

### A.     "Drug Notes"

Defendant argues that the district court abused its discretion in allowing Detective Ashburn to testify that notes found in defendant's wallet, containing individual's names followed by amounts, were consistent with drug notes detailing customers and amounts owed for drugs previously provided.

Defendant was charged with possessing methamphetamine with intent to distribute. During opening statements, defense counsel conceded defendant possessed the methamphetamine found at his residence, but claimed that defendant was a user of methamphetamine and did not have the intent to distribute the methamphetamine. Thus, the only issue in controversy for the jury was whether the methamphetamine was for personal use or distribution. Therefore, evidence of distribution was highly relevant. *See* FED. R. EVID. 401.

Detective Ashburn testified on behalf of the government as an expert in the area of methamphetamine investigations. "Properly qualified expert testimony is generally admissible if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Swafford*, 385 F.3d 1026, 1030 (6th Cir. 2004). This court "has allowed police officers to testify as expert witnesses about criminal activity since knowledge of such activity is generally beyond the understanding of the average layman." *United States v. Bender*, 265 F.3d 464, 472 (6th Cir. 2001) (quoting *United States v. Thomas*, 74 F.3d 676, 682 (6th Cir. 1996)). "Furthermore, we have held that such expert testimony by police officers is not unfairly prejudicial, particularly when the district court provides cautionary instructions to the jury." *Id.* Detective Ashburn was qualified as an expert in methamphetamine investigations. He possessed thirteen years of law enforcement experience, including four-and-a-half years with drug investigations, and had participated in at least 100 methamphetamine cases. The district court also gave a cautionary instruction to the jury as to the limitations of expert testimony and its use in accordance with the Sixth Circuit Pattern Jury

Instructions.

In *United States v. Swafford*, law enforcement officers executed a search warrant at Swafford's home and found methamphetamine and other evidence of distribution, including a lawyer's business card in Swafford's wallet, on the back of which was written "Tony Perry 280" and "Ron 110." *Swafford*, 385 F.3d at 1028. At trial, an officer testified that the amounts written on the business card corresponded to the cost of certain quantities of methamphetamine. *Id.* at 1031. As Swafford did not object to this testimony at trial, the court analyzed the issue under a plain error standard. *Id.* In finding that no plain error had occurred the court stated:

> [The officer's] testimony regarding common drug prices helped the jury to understand the evidence presented, and therefore was proper expert testimony. . . Further, he did not state that the numbers actually represented drug debts, which would have been beyond his knowledge, just that they were consistent.

*Id.*

In the present case, Detective Ashburn testified that he had observed notations made with prices charged for drug amounts in other investigations and that the note found in defendant's wallet was consistent with such records. This evidence was highly relevant as to the issue of whether defendant possessed the methamphetamine for personal use or for distribution. *See* FED. R. EVID. 401. Given the cautionary instructions provided to the jury, relieving any unfair prejudice that might exist, *see* FED. R. EVID. 403, the district court did not abuse its discretion by admitting this expert testimony.

**B.    Coffee Filters**

Defendant asserts that the district court abused its discretion by admitting expert testimony as to the significance of coffee filters containing methamphetamine residue at defendant's residence, arguing that this testimony regarding the use of coffee filters in the manufacture of

methamphetamine is irrelevant to the issue of whether he possessed the methamphetamine with the intent to distribute and was unduly prejudicial. The government contends that this evidence was directly relevant to defendant's access to distribution quantities of methamphetamine.

Relevant evidence is that "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." FED. R. EVID. 401. Evidence which is not relevant is inadmissible. FED. R. EVID. 402. Although evidence is relevant, it may be excluded if its probative value is substantially outweighed by unfair prejudice. FED. R. EVID. 403. Unfair prejudice "does *not* mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest decision on an improper basis." *United States v. Schrock*, 855 F.2d 327, 335 (6th Cir. 1988).

Detective Ashburn testified that he recovered coffee filters with methamphetamine residue in a box that contained five baggies of larger amounts of methamphetamine at defendant's residence. Detective Ashburn testified that he had seen coffee filters before at methamphetamine labs, that they were used during the manufacturing process, and they typically contained finished methamphetamine. Special Agent Jones also testified that coffee filters are frequently used in the process of manufacturing methamphetamine. Special Agent Jones testified that methamphetamine users would often save these filters and scrape out the methamphetamine residue to use. Defendant testified that he was given these filters by his methamphetamine supplier in order to use the residue.

Evidence concerning the methamphetamine residue in the coffee filters and the use of coffee filters in the manufacturing process was relevant to defendant's access to distribution quantities of methamphetamine. Defendant testified that the methamphetamine residue found in the coffee filters was for his personal use. Due to the different manner of packaging, the jury could have concluded

that the larger quantities of methamphetamine found in the baggies in the box were for distribution to others. Thus evidence concerning the use of coffee filters and methamphetamine use and production was relevant and its probative value was not substantially outweighed by its prejudicial effect. *See* FED. R. EVID. 401; FED. R. EVID. 403. Therefore, the district court did not abuse its discretion in admitting expert testimony as to the significance of the coffee filters found at the defendant's residence.

## C. Defendant's Son-in-Law

Defendant contends that the district court erred in allowing the government to cross-examine him concerning his son-in-law's methamphetamine manufacturing, arguing that the government's cross-examination regarding the methamphetamine use, manufacture, and possession by members of defendant's family was irrelevant and that the probative value of such evidence was substantially outweighed by its prejudicial effect.

During direct examination, defendant testified that he had been around people who manufactured methamphetamine and had purchased materials to make methamphetamine but had never manufactured the drug himself. Defendant maintained that he possessed the approximately 16.8 grams of methamphetamine solely for his personal use. On cross-examination, the government questioned defendant concerning his association with methamphetamine. Defense counsel only objected to this line of questioning when defendant was asked about his daughter's husband who was a manufacturer of methamphetamine.

A district court's evidentiary rulings are generally reviewed under an abuse of discretion standard. *Wesley*, 417 F.3d at 620. At trial, defense counsel objected to the admission of the testimony concerning the son-in-law on the basis that it was outside the scope of direct, however, defense counsel now objects to the testimony on the basis that it was irrelevant and that its probative

value was substantially outweighed by its prejudicial effect. "A specific objection overruled will be effective to the extent of the grounds specified, and no further." *United States v. Miller*, 316 F.2d 81, 84 (6th Cir. 1963) (quoting 1 Wigmore on Evidence (3d Ed., 1940) § 18C(2)). As defendant failed to object to the testimony on these specific grounds at trial, the district court's decision to admit the evidence will be reviewed for plain error. FED. R. EVID. 103; *see Swafford*, 385 F.3d at 1028. "[T]he plain error doctrine is to be used sparingly, only in exceptional circumstances, and solely to avoid a miscarriage of justice. Recourse may be had to the doctrine 'only on appeal from a trial infected with error so 'plain' the trial judge and prosecutor were derelict in countenancing it.'" *United States v. Cox*, 957 F.2d 264, 267 (6th Cir. 1992) (quoting *United States v. Hook*, 781 F.2d 1166, 1172 (6th Cir. 1986)).

"Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness." FED. R. EVID. 611(b). Given the defendant's testimony that he possessed the quantity of methamphetamine found in his residence solely for personal use, the nature and extent of defendant's involvement with methamphetamine was a proper subject of cross-examination. As his daughter resided with the defendant, the fact that her husband was a manufacturer of methamphetamine was relevant to defendant's access to distribution quantities of methamphetamine. *See* FED. R. EVID. 401. Such evidence was not unduly prejudicial under FED. R. EVID. 403. Therefore, the district court did not plainly err in admitting testimony regarding the defendant's son-in-law.

## III.   APPLICATION OF THE CAREER OFFENDER PROVISION OF THE SENTENCING GUIDELINES

Defendant argues that the district court erred by sentencing him as a career offender under § 4B1.1 of the Sentencing Guidelines. Defendant contends that there was insufficient evidence

presented to the district court that he ever pled guilty or was properly advised of his constitutional rights for the armed robbery and aggravated assault convictions he received in 1984.

The Presentence Report determined that defendant qualified as a career offender for Sentencing Guideline purposes based on his convictions for armed robbery, aggravated assault, and felony possession of methamphetamine. At sentencing, defense counsel contended that defendant never pled guilty to the armed robbery and aggravated assault convictions. Defendant took the stand to establish an evidentiary basis for this claim, testifying that he could not remember whether he pled guilty to the offenses, but did, however, recall serving time for the crimes. After reviewing the relevant certificates of conviction, the district court determined that defendant had in fact pled guilty to the offenses as set forth in the Presentence Report and sentenced him as a career offender.

A collateral attack on a prior conviction is not allowed at sentencing unless there has been a previous ruling that a conviction has been ruled constitutionally invalid or the conviction has been obtained when counsel has not been available or provided. *Custis v. United States*, 511 U.S. 485, 496-97 (1994); *United States v. Bonds*, 48 F.3d 184, 186 (6th Cir. 1995). Defendant testified that he was represented by counsel on the armed robbery and aggravated assault convictions he received in 1984. Therefore, defendant may not collaterally attack these convictions. *See Custis*, 511 U.S. at 496-97; *Bonds*, 48 F.3d at 186.

Once the government establishes the existence of a prior conviction, the burden is on the defendant to show that it is invalid. *See United States v. Hoffman*, 982 F.2d 187, 191 (6th Cir. 1992). Where a defendant presents only conclusory challenges lacking both a factual and legal basis, neither the government nor the court is under a duty to make further inquiry into the constitutional validity of the prior convictions. *United States v. Hope*, 906 F.2d 254, 263 (6th Cir. 1990). Here the defendant has failed to present a challenge with either a factual or legal basis to the constitutional

validity of his prior convictions.  Therefore the district court did not err in applying the career offender provision of the Sentencing Guidelines to defendant.

## Conclusion

Having had the benefit of oral argument, and having studied the record on appeal and the briefs of the parties, we are not persuaded that the district court erred in denying the defendant's motion to suppress, in its rulings on the challenged evidentiary issues, or in its application of the career offender provision of the Sentencing Guidelines to defendant.  Accordingly we **AFFIRM** the judgment of the district court.